Leonard H. Sandler, J.
In this nonpayment summary proceeding the legal question of broadest concern was presented by the tenant’s claim, sustained by the evidence, that her toilet had ceased to function, that the landlord had refused her request to make the required repairs and that she had hired someone at her own expense to repair the facility. The repairs cost the tenant $22, which I find was the necessary and reasonable cost of what was done, and the tenant, together with other defenses, seeks to set oft this amount against the landlord’s claim for rent.
*469 The essential issue presented is whether the willful refusal of a landlord to make repairs of an emergency character gives rise to a right on the part of a tenant to have the repairs made and to set off their reasonable cost against the rent claimed.
The evidence presented confronts this court in a somewhat different form with substantially the same question posed in the recently decided case of Amanuensis v. Brown (65 Misc 2d 15).
In Amanuensis (supra) I held that there were several sets of circumstances, established by the evidence in that case, in which violation by a landlord of his legal obligations under the Multiple Dwelling Law and the Housing Maintenance Code gave rise to defenses by tenants to claims for rent.
One such situation was where the landlord did not make a good faith effort to comply with the law, and this resulted in substantial violations seriously impairing the habitability of the apartment.
A second circumstance was where substantial violations existed, and code enforcement remedies had been tried and proved ineffective to induce compliance.
In this case, as in Amanuensis (supra), consideration of the issue necessarily must start with an analysis of the leading case, Davar Holdings v. Cohen (255 App. Div. 445, mot. for rearg. den. 256 App. Div. 806, affd. 280 N. Y. 828).
In the Davar case the tenant covenanted in the lease to comply with the requirements of law — and he had refused to have the apartment painted. When a code violation was entered against the premises, the landlord sent a painter to the apartment, who was denied access by the tenant. Thereafter, the tenant had the apartment painted at his own expense and sought to deduct the cost from the rent.
Not surprisingly, on these facts, the Appellate Division held for the landlord.
In so doing, the court said the following (p. 448): “ We are of opinion, therefore, that in a case of this character the tenant may not, himself, procure the required work to be done. Under an order so issued, the controversy is between the landlord and the public authorities. It is the landlord and not the tenant who must satisfy the department that the work has been done properly. The statute providing, as it does, its own penalties, should not, as between landlord and tenant, be further extended in scope.” (But cf. Altz v. Lieberson, 233 N. Y. 16, 19 per Cardozo, J.)
The Appellate Division also commented that if the conditions ordered to be remedied rendered the premises uninhabitable, *470 the tenant could have removed and, in an action for rent, have defended on the basis of constructive eviction.
I conclude here, as I did in Amanuensis (supra), that the Davar opinion is most reasonably construed as intended to apply to the kind of situation before that court — one in which the landlord acted in good faith; the violation did not significantly impair habitability and was not emergency in character; and in which it might reasonably be anticipated that enforcement procedures would be effective.
This construction, which seems to me a sound reading of the opinion, is given significant support by the cumulative weight of three important factors.
First, the whole thrust of later developments discloses constructive eviction to be an illusory protection for the ordinary residential tenant, and establishes that code enforcement is ineffective to achieve broad compliance with the law. (See Gribetz and Grad, Housing Code Enforcement: Sanctions and Remedies, 66 Col. L. Rev. 1254; Note, Enforcement of Municipal Housing Codes, 78 Harv. L. Rev. 801.)
Second, uniform and increasingly outspoken criticism by scholars condemns the outdated and anachronistic concept that separates the landlord’s right to receive rent from his duty to maintain his building in accordance with the law. (Quinn and Phillips, Law of Landlord-Tenant: A Critical Evaluation of the Past with Guidelines for the Future, 38 Fordham L. Rev. 225, reprinted N. T. L. J., May 12,13,14,15,1970; Sax and Hiestand, Slumlordism as a Tort, 65 Mich. L. Rev. 869; SchoshinsM: Remedies of the Indigent Tenant: Proposal for Change, 54 Georgetown L. J. 519.)
Third, the recent decisions by appellate courts in other jurisdictions have discarded that outdated and inequitable concept while bringing this area of law into line with the whole body of modern legal development, which is premised on the interdependence of rights and duties. (See, e.g., Javins v. First Nat. Realty Corp., 428 F. 2d 1071; Lemle v. Breeden, 462 P. 2d 470 [Hawaii]; Marini v. Ireland, 56 N. J. 130; Brown v. Southall Realty Co., 237 A. 2d 834 [C. A. D. C.]; Pines v. Perssion, 14 Wis. 2d 590; Schiro v. Gould & Co., 18 Ill. 2d 538.)
The facts before me make out a clear and compelling case for sustaining the tenant’s right to set off the reasonable expense of her repair against the rent claimed.
The law is clear that the landlord had the statutory duty to repair the facility in question for this tenant. (Multiple Dwelling Law, §§ 77, 78.) In contrast to Davar (supra), this tenant confronted an emergency situation requiring immediate action *471 —not one in which she could calmly await the outcome of court proceedings, hoping that the landlord would eventually come to an understanding of his responsibilities.
The tenant was entitled to have her toilet put in working condition promptly.
To hold that under these conditions a tenant may not have the repairs made herself and set off the reasonable expense against the rent would be to reduce the statute to an empty, meaningless form of words.
It is surely audacious for this landlord to refuse to discharge his legal duties with regard to a facility so essential to the habitability of an apartment, and then complain that the tenant should not be allowed to make herself his creditor.
These views are in accord with the general trend of the cases cited above. Specifically, they agree with the recent decision of the New Jersey Supreme Court in Marini v. Ireland (supra), in which that court reached the same conclusion on very similar facts. (Cf. Garcia v. Freeland Realty, 63 Misc 2d 937.)
In short, I hold that a tenant may make repairs and deduct their reasonable cost from rent when (1) the condition in question creates an emergency seriously affecting the habitability of the home, (2) the landlord has refused to make the repairs, and (3) the condition cannot reasonably be permitted to continue until code enforcement proceedings have run their course.
The remaining issues can be disposed of briefly.
I find that the tenant failed to sustain her burden of proof that she had contributed a certain sum toward the purchase of a new front door and had been required to expend another sum for repairing a window not broken by her.
I find, however, that the landlord had agreed to forgive one month’s rent if the tenant arranged to have the apartment painted herself, that she did so, and that she is accordingly entitled to the agreed deduction.
The landlord here seeks rent totaling $321. Deducting the $22 for the toilet repair and one month’s rent of $71.29 for the painting, the landlord’s claim is adjusted to $227.71.
Finally, I find that the evidence adduced at the trial amply sustains the tenant’s plea that this court issue an order under paragraph (b) of subdivision 1 of section 755 of the Beal Property Actions and Proceedings Law permitting her to deposit the rent in court until such time as the conditions are remedied.
Specifically, I find that the tenant proved that there were rat holes in the bedroom and bathroom, and falling plaster, extensive and dangerous in character, in the bathroom.
*472 Following the trial I received a copy of a letter from landlord’s attorney to the tenant, fixing a date on which repairs would be made.
In the absence of any evidence or stipulation before me establishing that the repairs have been made, I am required by the record before me to sign a section 755 order.
Accordingly, an order is issued herewith pursuant to paragraph (b) of subdivision 1 of section 755 of the Beal Property Actions and Proceedings Law authorizing the tenant to deposit her rent in court and staying all proceedings until the court is satisfied that the enumerated conditions have been repaired.