Richard S. Lane, J.
According to tenant’s testimony, her apartment is a chamber of horrors:
No heat
No gas for stove
No hot water
No running water in kitchen
Low water pressure in bathroom
Leaking pipes in bathroom
Toilet does not flush
Overhead toilet bowl breaking off from wall
Multiple cracks and holes in walls and ceilings
Ceilings and walls soggy from frequent leaks .
Broken window panes
Windows without cords to hold them open
No exterminator service
Ever-present rats and cockroaches
No superintendent
Filthy public corridors
The Housing Director of the West Harlem Community Organization corroborated everything tenant said. Evidence of multiple code violations was introduced, some of them dating back over a year.
The court made a personal visitation to the premises, accompanied by a court officer and on notice to bqth parties. The verbal description of the conditions on the record was not sufficient to prepare me for what my eyes now saw. Many of the apartments in the building are now vacant, and some of them have apparently become the refuge of winos and addicts. A posted notice from Consolidated Edison indicated that a shutoff of electricity would soon be added to the travails of tenant.
Landlord did not really controvert the sad, indeed tragic, story of this building. He lamely denied knowledge of needed repairs except to the water and heating pipes necessitated by an earlier fire in the basement. This is belied by his several visits to the premises in an attempt to collect rents since he took over the building in October, 1971. Concededly he has not even initiated, let alone diligently prosecuted, the repairs to pipes which he admits are needed. Such knowing indifference to the *162 suffering of Ms tenants over such an extended period can only evidence a determination to force them out.
The facts here render code enforcement remedies futile. Even a section 755 order (Real Property Actions and Proceedings Law, § 755) requested by tenant as alternative relief would be to no real avail. Why .should she pay money even into court for what she is receiving? It is probably too late for even an article 7-A order (Real Property Actions and Proceedings Law, art. 7-A) because of the reduced number of people still living in the building. Regretfully I conclude that Mrs. Stewart will soon follow her many former cotenants out into the streets. Since: reaching that conclusion, my forebodings have been confirmed. I have been advised a few days ago by counsel for Mrs. Stewart that the Department of Health has ordered the building vacated.
I find that the defense of breach of implied warranty of fitness for human habitation has been more than .sustained (Amanuensis, Ltd. v. Brown, 65 Misc 2d 15). The rents sought in this proceeding from November, 1971, through March, 1972, are hqld abated, and tenant may have judgment dismissing the petition with prejudice, together with the costs of the proceeding.
The court commends tMs case to the attention of the appropriate city and State legislátive assistants and committees. It demonstrates graphically how rapidly events overtake and render impotent currently available legislative remedies and how desperate is the need for new approaches if we are to conserve huge segments of New York’s dwindling housing resources.