Arthur E. Blyn, J.
This case is a classic example of the war between landlord and tenant.
There is probably not one area of landlord-tenant law that has not been encompassed in the history of the multiple dwelling which is the subject of this current litigation — a nonpayment proceeding.
The controversy poses a critical question: What is the ultimate objective of the statutory defenses and proceedings available to tenants and the newly developing case law providing new concepts for the protection of tenants!
Is the whole idea to “ get the landlord ”! Or is it that which seeks, within realistic bounds, the rehabilitation of housing and *450 consequently the provision of habitable accommodations for tenants ?
This multiple dwelling, containing 28 apartments, based on its history of prior litigation, which litigation has been, by consent, made part of the record, represents a building which was in the decline characteristic of much of the housing stock of this city.
Back in the latter part of 1968 the tenants organized a rent strike and proceeded to meet the landlord’s nonpayment proceedings with a vigorous resort to the statutory remedies of section 755 of the Beal Property Actions and Proceedings Law and article 7-A of said law. There were numerous appearances, dismissals, motions and trials. The net result: — a series of expenditures, along with similar efforts of a receiver appointed in connection with a mortgage foreclosure proceeding, made from rentals collected by the administrator, receiver and court, which resulted in considerable rehabilitation progress, including the installation of a new boiler.
The within proceeding was brought by the landlord against the tenant, who was one of the original participants in the rent strike and subsequent legal activities of the tenants against the landlord.
It is clear from the records and testimony that this tenant did not pay all of the rent due during the various periods when the landlord was not in control of the rental income or the collection thereof. The tenant in his memorandum of law raises for the first time the issue of whether the landlord has the right to demand the rent for the periods in question, the tenant claiming that there was no landlord-tenant relationship because of the existence of the administrator under the article 7-A proceeding for the period in question. The court rejects this argument. The landlord was the owner of the premises during such periods; was subject to violations and other legal process as a result of such ownership; was responsible for tax bills, insurance premiums, mortgage payments and other obligations as such owner.
Actually there is no real dispute as to the final net amount of the unpaid rent. The petition was amended by the landlord during trial to exclude the sums of $313.81 and $105 alleged by the tenant to have been previously paid to the administrator or receiver. The landlord also gave the tenant a credit of $140 expended by him for the purchase of a refrigerator for his apartment. The original sum sought in the petition was $1,503.81 which covered a period in 1969; 7 months in 1970; and 10 months in 1972 and 1973, including April of 1973. This left a net sum *451 due of $1,085 after the amendment and credit, thus eliminating the arrears for 1969 and part of 1970.
The tenant’s defenses included:
1. Improper use of summary proceeding;
2. Defective petition because of improper petitioner;
3. Improper petition because wholly on information and belief and is unverified;
4. General denial;
5. Breach of warranty of habitability;
6. Actual eviction by virtue of alleged failure to make necessary repairs and maintain essential services;
7. Constructive eviction by virtue of failure to make necessary repairs and maintain essential services and breach of covenant of quiet enjoyment;
8. Tenant also moved at trial for permission to add as an additional defense, section 302-a of the Multiple Dwelling Law.
(The court reserved decision on the motion to add section 302-a of the Multiple Dwelling Law as an additional defense.)
In addition the tenant set forth two separate counterclaims; one in the sum of $2,000 for intentional failure and refusal by the landlord to maintain the premises in a habitable condition, and resultant emotional distress; and the other in the sum of $1,000 for willful breach of the warranty of habitability, contending that such conduct constituted a tort.
These counterclaims were not supported by the testimony in that there was no proof of willful or intentional acts or failure to act on the part of the landlord and there was no actual proof as to damages, and they are dismissed.
The tenant testified that there were conditions which required repair and correction and the court believes that there still remain items which the landlord should take steps to correct and repair. However, and of great importance to the court in arriving at its decision, an inspection report of the Housing and Development Administration, Department of Bent and Housing Maintenance, made on October 20, 1972 (the last time the building was inspected), set forth the following comment: “ Good effort being made for 100% completion. Work in progress throughout bldg, at times of inspection. ’ ’
This really focuses on the court’s problem and relates back to the question posed at the beginning of this decision as to the ultimate objective sought in utilization of the statutory defenses and new case law available to tenants. This building, which obviously was going downhill, has been, through the efforts of the tenants, in the process of upgrading. Paradise it is obvi *452 ously not — paradise it will surely never be. But faced with the reality that there has been a cessation of any building in this city for low-income tenants and faced with the reality of a substantial rate of abandonment of housing by landlords, what should the court do when there appears to be a possibility of rehabilitation of present housing stock? Should the court adopt the theories advanced by the tenant to defeat the efforts of the landlord in this summary proceeding?
Let us examine some of the theories of the tenant.
First he says that this nonpayment proceeding is an improper use of summary proceeding. He cites Gramford Realty Corp. v. Valentin (71 Misc 2d 784 [Civ. Ct., N. Y. County, 1972, Younger, J.]) and Maxwell v. Simons, N. Y. L. J., March 30, 1973, p. 18, col. 1 (Civ. Ct., Kings County, Fleary, J.) which cases dealt with nonpayment summary proceedings where landlords sought to recover rents for periods of from eight months to one year. In both cases it is apparent that the landlords had the option to commence such nonpayment proceedings when rents began to fall behind and failed to act. Both cases held that although summary proceedings were denied to the landlord, he could commence plenary actions for the arrears in the proper forum.
It should be pointed out that in the within case the landlord did not have such an option. He was not in a position for a good portion of the periods of nonpayment of rent to commence nonpayment proceedings, inasmuch as there was at various times a court-appointed administrator or a court-appointed receiver, with the sole power to collect rent. The fact that neither the administrator nor the receiver collected all of the rent due from this tenant should not work to the detriment of the landlord. His right to a plenary action in this case would at best be illusory. The tenant’s income is such that any judgment would virtually be uncollectible. This court subscribes tó the principle established by the Gramford and Maxwell cases, but it believes that it should be used sparingly and in cases where it is clear that the landlord was manipulating the tenants for a “ set-up ” with eviction as the intended goal.
As to the technical defenses dealing with the petition, these are rejected by the court as being without foundation.
The tenant then relies on the newly developing concept projected by a number of Judges of this court — the warranty of habitability. (Amanuensis, Ltd. v. Brown, 65 Misec 2d 15 [Civ. Ct. of City of N. Y., N. Y. County, 1971, Sandler, J.]; Coda Cent. Co. v. Jiminez, Index No. L&T 112178/71 [1971, Kelly, J.]; Morbeth Realty Co. v. Rosenshine, 67 Misc 2d 325 [Civ. *453 Ct. of City of N. Y., N. Y. County, 1971, Kassel, J.]; and Mannie Joseph, Inc. v. Stewart, 71 Misc 2d 160 [Civ. Ct. of City of N. Y., N. Y. County, 1972, Lane, J.].) This court also expresses agreement with this concept but again believes it should be used with discretion and sparingly. The subject apartment obviously requires more upgrading. But where does the line get drawn as to what constitutes a breach of warranty of habitability? If this apartment represents a condition where this principle should be applied, then certainly a vast number of apartments in this city fall into such category. Well, one might say, that is exactly so and that is why this principle should be applied to all such apartments. Query — if we succeed thereby in accelerating the already substantial number of abandoned buildings, where do this tenant and other tenants similarly situated go? The court does not accept the generally used and oversimplified statement that all landlords are making large profits in their building and are simply “ crying poor mouth ”. Landlords do not abandon buildings because they are making lots of money operating them.
Are the tenants — for whom these statutory protections were devised, and for whom the newly developing case law has been developed, going to benefit? The answer is yes if used with care and applied only as the particular facts require. If used indiscriminately the answer can be no, if such application results in a diminution of the housing stock in this city.
The court rejects the defenses of constructive and actual eviction inasmuch as it does not believe that the testimony warrants upholding such defenses.
The court will now deal with the motion of the tenant to permit the assertion of section 302-a of the Multiple Dwelling Law as a further defense. This statute provides for total abatement of rent where a rent-impairing violation persists for a period of six months or more. The statute requires, as a precondition before this defense can be raised, that at the time it is interposed the tenant must deposit with the Clerk of the court the suni of money sought by the landlord in his petition. The tenant in this ease did not deposit the moneys sought by the landlord in his petition. The tenant argues that the portion of section 302-a which requires the deposit is unconstitutional, citing Amanuensis, Ltd. v. Brown (65 Misc 2d 15, supra). This court is in agreement with the criticisms in that case of the deposit requirement. However section 302-a which consists of three subdivisions and paragraphs thereof, is a tightly-woven piece of legislation; is quite drastic in its results; and indeed *454 one might say punitive in its thrust. This court is of the opinion that selected portions of section 302-a cannot be excised by a declaration of unconstitutionality leaving the remainder of the statute operative. Either the whole statute is unconstitutional or it is not. As a consequence it could not be used by the tenant if there is a finding that section 302-a as a whole is unconstitutional. If it is constitutional then the tenant cannot avail himself of this statute as a defense because he has not deposited the sum sought in the petition. It is therefore not necessary to rule on the question of the constitutionality of the entire statute. It is also therefore not necessary to go into the question as to whether a rent-impairing condition existed for a period of six months or more. The motion for permission to assert section 302-a as an additional defense is denied.
The court believes that this building should be given a chance. If it continues on the path of upgraded maintenance and services and provides at least reasonably habitable housing to the tenants, well then, a constructive result will have been achieved. If instead the landlord falls back and permits the building to again decline in maintenance and services, the tenant has all of the statutory tools and new case law to resort to in future litigation. This decision does not foreclose such further struggle if it be necessary. The tenant has deposited with his attorney the sum of $600 which has been held in escrow pending a decision by this court. The landlord shall have final judgment in the sum of $1,085, which sum includes rent up to April 30, 1973. The attorney for the tenant is directed to turn over to the attorney for the landlord, upon service of a copy of this decision upon him, the $600 being held in escrow. This leaves a balance, of $485 due tile landlord. Execution is stayed to permit the tenant to pay out said balance of $485 at the monthly rate of $13.50, concurrently with the regular monthly rent, until the full amount is paid, the first payment to commence on August 1, 1973. In the event of any default in any of such monthly payments, which default remains uncured after 10 days’ notice in writing, and upon the affidavit of the landlord or her attorney attesting to said default, a warrant shall then be issued and executed.
The court notes that the landlord has waived the statutory limitations of subdivision 2 of section 732 of the Eeal Property Actions and Proceedings Law with regard to the stay hereinabove provided.