Allen Murray Myers, J.
In this dispute between a landlord and his tenant, neither traditional landlord-tenant principles nor the application of contract principles under the doctrine of the implied warranty of habitability provide an entirely satisfactory solution.
The landlord herein has instituted a plenary suit to recover the sum of $2,899.78 representing the agreed rent for the period from February, 1972 through December, 1973 for apartment 6 on the top floor of 303 East 37th Street in Manhattan. The tenant conceded that she did not pay the rent. In defense she claimed that she was discharged from her obligation to pay the rent during the period in question because of the landlord’s willful and wanton failure to keep the roof over her apartment in repair. Although she contended that her apartment was thus rendered uninhabitable during the period in question she did not move out. The defendant has also counterclaimed for damages to her household goods and personal belongings.
The uncontroverted testimony of the defendant, which I found entirely credible, was that in 1968 she took occupancy of her apartment, which consists of a foyer, living room and kitchen. For three years, 1971, 1972 and 1973 despite continued and persistent complaints rainwater was permitted to leak through the roof into her apartment until December, 1973 when the roof was finally repaired properly. On Memorial Day, 1972 there was a heavy rain fall and water gushed into the apartment "like there was no roof’. Clothing, rugs, upholstered furniture and other personal effects became so waterlogged that they had to be discarded and replaced and *1056 cockroaches were attracted to the soggy contents of the water laden apartment.
From the evidence I find that the landlord willfully, wantonly and in flagrant violation of law failed to repair the roof. He thus failed to meet a substantial obligation of the lease on his part to be fulfilled.
Should the landlord be permitted to recover the agreed rental price for the apartment despite his persistent flouting of the laws which classify a leaky roof as a rent impairing violation (see Multiple Dwelling Law, § 78, subd 1, which provides that: "Every multiple dwelling, including its roof * * * shall be kept in good repair.”; Administrative Code of City of New York, § D26-10.01; Multiple Dwelling Law, § 302-a; and order No. 507 of the list of all violations classified as rent impairing under Multiple Dwelling Law, § 302-a as published in 3 Rasch, New York Landlord and Tenant [2d ed], § 1320, p 136) or should there be some setoff against the rent due for his failure to meet his statutory obligations? Obviously, there must be a remedy.
Traditional landlord-tenant principles would not suffice because no matter how deplorable the condition of her apartment, the tenant would be required to pay the rent as long as she remained in possession. But it would be impractical for this tenant to move out so that she could claim that she had been constructively evicted (see 2 Rasch, New York Landlord and Tenant [2d ed], §§ 920-947) because under present conditions it would be virtually impossible to find a similar dwelling at a similar rental in the vicinity. Neither could the tenant make the necessary repairs herself because the common law prohibits it (Altz v Leiberson, 233 NY 16; Davar Holdings v Cohen, 255 App Div 445, mot. for rearg. den. 256 App Div 806, affd 280 NY 828); and even if permissible, as a practical matter, where would a tenant obtain the money to repair the roof of an apartment house. Nor could the tenant enforce the statutory duty to repair the roof imposed by section 78 of the Multiple Dwelling Law because it is enforceable only by the municipality and not by the tenant (Emigrant Ind. Savs. Bank v One Hundred Eight West Forty-Ninth St. Corp., 255 App Div 570, affd 280 NY 791).
In those few recent cases where tenants were permitted to recover the cost of repairs from the landlord they involved hazardous conditions requiring immediate inexpensive repairs *1057 within the apartment (Jackson v Rivera, 65 Misc 2d 468; Garcia v Freeland Realty, 63 Misc 2d 937).
Because of these difficulties, the traditional landlord-tenant principles, based on the theory that a lease was a conveyance of an interest in land, gave way to a new, and still evolving doctrine that a lease was a contract and that the contract principle of interdependency of covenants should be applied.
Under that doctrine an implied warranty of habitability is read into leases and the tenant is not required to move before he can obtain an abatement of rent (Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Amanuensis Ltd. v Brown, 65 Misc 2d 15; 57 E. 54 Realty Corp., v Gay Nineties Realty Corp., 71 Misc 2d 353; Jackson v Rivera, 65 Misc 2d 468; Mannie Joseph, Inc. v Stewart, 71 Misc 2d 160; Morbeth Realty Corp. v Rosenshine, 67 Misc 2d 325; Steinberg v Carreras, 74 Misc 2d 32, revd on other grounds 77 Misc 2d 774). This doctrine recognizes that apartment renters, unlike farmers, are not seeking the land on which the apartment is located but rather, "they seek a well known package of goods and services —a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance.” (Javins v First Nat. Realty Corp., 428 F2d 1071, 1074.) The law of contracts permits an implied warranty to be read into oral and written apartment leases that the apartment is safe, sanitary and fit for human habitation. The laws in force at the time that such lease agreements are entered into become a part of such contracts (Dolman v United States Trust Co. of N. Y, 2 NY2d 110). When a landlord fails to perform his obligations under the lease contract by flagrantly and persistently violating the law, as is the case here, I find that there is such a substantial breach of the landlord’s obligation under the contract that it serves to discharge the tenant’s obligation to pay rent.
The doctrine of substantial performance is usually applied to construction contracts but is not limited to such actions (Hadden v Consolidated Edison Co., 34 NY2d 88; Lenhart— Altschuler Assoc. v Portner, 27 Misc 2d 439). What constitutes substantial performance is a subjective decision (Hadden v Consolidated Edison Co., supra, p 96). The case of Triple M. Roofing Corp. v Greater Jericho Corp. (43 AD2d 594) is particularly significant because it involves two roofs which remained respectively 15% and 30% incompleted and the court *1058 held that the evidence failed to establish substantial performance by the roofer, citing Fox v Davidson (36 App Div 159) where the failure to complete only 5% of the total work did not constitute substantial performance. The court went on to say that "the law is well settled that the party who inexcusably defaults may not recover in quantum meruit though the defendant has received some benefit.” In effect the obligation to pay for the partially completed roofs was discharged. (See, also, Spence v Ham, 163 NY 220; Phoenix Hermetic Co. v Filtrine Mfg. Co., 164 App Div 424; Richardson, Contracts [5th ed], § 427.)
The pleadings in this case also lend themselves to a similar determination of the issues, by the granting of punitive damages on the counterclaim in an amount sufficient to set off the rent which might have accumulated during the period of the willful failure to repair the roof (but for the theory that the obligation to pay the rent was discharged by the landlord’s substantial failure to perform his obligations).
The underlying theory for the enforcement of housing laws which require landlords to furnish and maintain decent housing is punitive in nature (Malek v Cruz, 74 Misc 2d 448). While statutes such as section 302-a of the Multiple Dwelling Law, section 143-b (subd 5, par [a]) of the Social Services Law and the emergency rent laws provide such punitive measures as rent abatement, fines and criminal sanctions, these statutory remedies are not exclusive. Nevertheless the court can use them as a guide in fixing punitive damages (see I.H.P. Corp. v 210 Cent. Park South Corp., 16 AD2d 461, affd 12 NY2d 329).
In this case a complaint was made to the Department of Rent and Housing Maintenance on February 19, 1972, yet the violation continued. Since the failure to repair a roof is a rent impairing violation under section 302-a of the Multiple Dwelling Law, why cannot the court abate the rent on the basis of punitive damages? The remedy fits. By fixing punitive damages on the counterclaim, the problem raised by Steinberg v Carreras (77 Misc 2d 774) is avoided. In that case the Appellate Term held that a tenant is required to furnish proof of the reduced value of the apartment which most tenants cannot do and very often is not feasible.
The counterclaim herein alleges facts which would entitle the defendant to punitive damages even though they were not *1059 pleaded (Gill v Montgomery Ward & Co., 284 App Div 36; Korber v Dime Sav. Bank, 134 App Div 149).
Defendant’s answer alleges that plaintiff failed to repair the roof after repeated notice. The evidence bears out the willful failure to make the proper repairs and that as a result of that failure, the defendant suffered damages. The purpose of punitive damages is to punish a wrongdoer for his misconduct and for the protection of the public against similar acts (Walker v Sheldon, 10 NY2d 401; 14 NY Jur, Damages, § 176). The act must be done with actual malice or such wantonness or recklessness as to imply or permit the inference of malice. (14 NY Jur, Damages, § 177.)
The deliberate and persistent refusal for three years after notice, of this landlord to comply with the statutes (Multiple Dwelling Law, § 78) and Administrative Code (§ D26-10.01) exhibits such a malicious, wanton and reckless disregard and indifference for the law as to warrant the imposition of punitive damages. Such damages should be imposed to vindicate the public interest in and to encourage the prompt compliance with the law. The fact that the act complained of also constitutes a violation of statutes imposing civil and criminal sanctions (Multiple Dwelling Law, §§ 78, 304) adds weight to a finding of moral culpability (Cleghorn v New York Cent. & Hudson Riv. R. R. Co., 56 NY 44; Colligan v Fera, 76 Misc 2d 22) and does not foreclose the imposition of punitive damages (Colligan v Fera, supra; Cooper v Mallory, 51 Misc 2d 749; see, also Astoria Assoc. v Fluegel, NYLJ, Oct. 1, 1971, p 19, col. 7).
A strong statement of the significance of punitive damages and where they should be awarded may be found in the Appellate Division opinion of Judge Breitel (now Chief Judge of the Court of Appeals) in I.H.P. Corp. v 210 Cent. Park South Corp. (16 AD2d 461, 466, affd 12 NY2d 329, supra) wherein he stated: "In this case the compensatory damages, or even the combination of compensatory damages and the amounts assessable for contempt of an injunction might not suffice * * * And even if it were not true of this landlord it could well be true of another, whose willful misconduct would be deterred by the menance of punitive damages.”
So far, the entire spate of statutes and regulations designed by the Legislature to compel compliance with the Building Code, Multiple Dwelling Law and other tenant protection laws have been ineffectual. Under section 302-a of the Multiple *1060 Dwelling Law it takes about six months to get a violation on the record and another six months before the rent abatement can take effect. The menance of punitive damages may be what is needed. I therefore find, in the alternative, that the defendant is entitled to punitive damages equal to the amount of the rent demanded in the complaint and that there is thus a complete setoff.
With reference to the personal belongings damaged as a result of the rain leaks, defendant testified that the following were totally destroyed: an upholstered club chair, a green foyer rug, a blue living room rug, 2 woolen suits, 2 pairs of slacks and 2 summer dresses. The chair and rugs which were approximately 3 Vi years old were purchased new for $561. The inflationary trend would increase their replacement value to at least $600 and depreciation would reduce their fair and reasonable value to about $300. Since no evidence was furnished regarding the clothing claimed to have been damaged, the court can award only nominal damages of $10.00.
Defendant produced no expert as to compensatory damages and I find that there was no need to do so. There is a respectable body of law which holds that: "A reasonable basis for computation, and the best evidence which is obtainable under the circumstances of the case and which will enable the jury to arrive at an approximate estimate of the loss is sufficient.” (McCormick, Damages, § 27, p 101; see, also, Lobell v Paleg, 154 NYS2d 709; Lake v Dye, 232 NY 209; Hawver v Bell, 141 NY 140; Jones v Morgan, 90 NY 4; Schwartz v Fletcher, 238 App Div 554.)
The antidote for scofflaw landlords may be the swift and condign imposition of compensatory and punitive damages where necessary.
The complaint is dismissed and judgment is granted for $310 in favor of defendant against plaintiff on the counterclaim.