*217 OPINION OF THE COURT
Jane S. Solomon, J.
Although gussied up by several side issues, this commercial nonpayment proceeding presents one singularly interesting issue concerning the interplay of landlord and tenant law and the Federal Bankruptcy Code (11 USC) which appears never to have been addressed by any case or commentary. The issue is whether payments made by a debtor-tenant during a chapter 11 case must be applied by its landlord to charges incurred during the pendency of the chapter 11 case or whether, upon dismissal of the chapter 11 case, the landlord may consider such payments as properly applied first to the prechapter 11 arrears and to charges for the prechapter 11 period which it first billed during the chapter 11 period and then to charges as they arose during the chapter 11 case. If the landlord may not proceed in the latter fashion, and I hold that it must apply payments made by its tenant during the chapter 11 period to charges incurred during that period, how are its rights to bring a summary nonpayment proceeding under New York law affected? As discussed below, the application of chapter 11 payments to chapter 11 obligations should not prevent a landlord from seeking relief in a summary proceeding for unpaid prechapter 11 rent.
BACKGROUND
Pursuant to a lease made September 19, 1978, as extended and modified (lease), respondent, Lemi, Inc., doing business at the leased premises as the restaurant known as Copper Hatch, II, is the tenant of petitioner, West Seventy-Ninth Street Associates, successor since 1984 to the original lessor, for a term commencing October 1, 1978 and ending February 28, 1991.
By the terms of the lease, respondent is to pay monthly base rent of $5,545.08, together with additional rent measured each year by the real estate tax escalation clause of paragraph 43 and water charges as provided in paragraphs 28 and 40. The standard Real Estate Board of New York, Inc. form lease contains “no waiver” provisions in paragraph 24 and a provision for legal expenses and attorney’s fees in paragraph 18; paragraph 31, covering a $10,000 security deposit, is modified by a longhand amendment in the margin to provide that the deposit “is to be placed in an interest bearing account and the interest is to be annually paid to the tenant”.
In March 1987, management of the property where the *218 premises are located was taken over by Kingswood Management Corp. (Kingswood). At the time, Kingswood determined that respondent was in arrears for $6,007.79. From and after April 1, 1987, when Kingswood recorded the receipt of $5,545.08 from respondent against the base rent and a water charge of $495.32, until the first week of December 1987, petitioner received no funds from respondent.
On August 27, 1987, respondent filed a chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York. It operated as debtor in possession until July 26, 1988 when the chapter 11 case was dismissed. During the chapter 11 period, respondent neither assumed nor rejected the lease — obtaining several extensions of the time to do so under 11 USC § 365 (d) (4). Starting in December 1987, as the result of negotiations in the Bankruptcy Court, respondent made a series of payments on account of its obligations under the lease.
The monthly bills rendered for petitioner showed current charges and arrears as separate items. As it received payments during the chapter 11 case, Kingswood credited them to the earliest unpaid charges due according to its records. Thereafter, it continued this practice through October 3, 1988 as respondent made monthly payments in the amount of the base rent and periodic payments of $1,500 which respondent identified as on account of the 1988-1989 tax escalation that had been billed by Kingswood in August 1988. Between June and December of 1988, in addition to telephone calls, there were 2 or 3 meetings between the parties. During those encounters, respondent was shown Kingswood’s records of respondent’s account. The magnitude of the real estate tax escalations were of particular concern to both sides, and petitioner indicated it would accept $4,000 to $5,000 monthly on account of the arrears. Respondent was given data to verify the tax calculations and expressed concern about its ability to pay what petitioner sought. Respondent did not challenge the amount claimed by petitioner; rather, the discussions were directed to reaching an amicable accommodation.
THE POSITIONS OF THE PARTIES
On October 3, 1988, after crediting a payment of $5,545.08, Kingswood’s records showed, in accordance with the practice described above, that respondent owed $115,289.45 to petitioner. This nonpayment proceeding was thereafter com *219 menced. The petition (petition) states that the foregoing sum represents base rent for part of January and all of February through October 1988, the 1987-1988 and 1988-1989 real estate tax escalation charges, a water charge, a bank charge billed during the chapter 11 period, and $1,500 as "legal”.
From respondent’s point of view, however, at worst, it is in arrears for charges attributable to the prechapter 11 period and, perhaps, those incurred and unpaid during the chapter 11 period. It contends that it is current on postchapter 11 rent and additional rent billed from August through the instant petition so that, while petitioner may have grounds for a plenary action, it may not maintain this summary proceeding. On this basis, and on the ground that petitioner had not established a sum certain to which it is entitled, at the close of petitioner’s case respondent moved for judgment dismissing the petition.
During the trial, petitioner moved to amend its petition to include sums due under the lease through January 1989. Respondent opposed this request. In reserving decision on the motions to dismiss and to permit the amendment, I directed both sides to submit their proof regarding postpetition rent. Petitioner proved that, after commencing this proceeding, it billed respondent the sum of $44,970.47 including base rent from November 1988 through January 1989, $28,335.23 as the balance of the 1988-1989 tax escalation because the bill presented in August 1988 was calculated erroneously, and water charges of $1,591.06. It was also shown that, during this period, petitioner received $28,180.32 from respondent. Consistent with its position regarding receipt of all other payments, petitioner applied respondent’s postpetition payments toward arrears and not to the current items for which the payments were ostensibly tendered.
Respondent’s evidence included a series of checks drawn in 1988. Almost every check for $5,545.08 contains a legend on the printed line next to "For” on the lower left-hand corner of the check indicating that it is intended to pay base rent for the month in which it was drawn. Every check for $1,500, and one for $1,705, contains a legend indicating it is for real estate taxes. Some, particularly those drawn after July 1988, include the tax year. Respondent contends generally that petitioner is bound by these notations which, it says, constitute restrictive endorsements supporting the defense of accord and satisfaction. In addition, respondent asserts that during the chapter 11 period it was permitted to pay only obligations which it *220 incurred during that period and that, accordingly, petitioner is required to credit such payments to charges which arose during the chapter 11 period. In support of these conclusions, it points out that employees of Kingswood initialled and wrote "OK” on the face of each check tendered during the chapter 11 period.
In response to the general argument, petitioner asserts that the legends are not binding as restrictive endorsements, and that the "OK” notations are simply permission to the bookkeeping staff to deposit the checks. In any event, petitioner says that it is fully protected by the language of paragraph 24 of the lease which includes the following: "No payment by Tenant or receipt by Landlord of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check * * * be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord’s right to recover the balance of such rent or pursue any other remedy in this lease provided.”
Regarding the payments made during the chapter 11 case, petitioner contends that, once the case was dismissed without any action regarding the lease, the parties were restored to the status quo ante, and petitioner was entitled to have applied the payments as it saw fit, namely, to the "earliest stipulated rent”.
In its answer to the petition, respondent included three "setoffs and/or counterclaims”, the last of which asserted damages for failure to pay any interest on the security deposit as provided in paragraph 31 of the lease. In petitioner’s motion to strike or sever the counterclaims based on paragraph 25 of the lease, in which respondent waived the right to assert any in a summary proceeding, the copy of the lease which it submitted to the court and upon which it relied in its papers lacked the marginal notation concerning the maintenance of the security deposit in an interest-bearing account. Respondent failed to provide a correct copy of the provision. Understandably, the November 7, 1988 decision by Judge Lane on that motion, in addition to severing the other counterclaims, found that "nothing in the lease * * * commands current payment of interest”.
During the course of the trial of this proceeding, respondent revived the issue of interest on the security deposit, and *221 petitioner realized it had been relying on an incorrect copy of the lease. Under the circumstances, both sides agreed that I may also consider the treatment of respondent’s "third setoff and/or counterclaim” for interest on the security deposit.
FINDINGS OF FACT
Petitioner established that the base rent and additional rent measured by the real estate tax escalation clause were cor-, rectly, though often belatedly, calculated and billed by it, through Kingswood, to respondent. Regarding the water charges, petitioner’s employees testified that the charges are an allocation, made by an outside company, of respondent’s alleged share of water consumption registered on a meter which measures the building’s use of water.[1] Respondent’s president testified that, as the lease suggests in paragraph 40, there are water meters on the restaurant premises.
I find that petitioner failed to carry its burden of proof on the issue of respondent’s obligation to pay any of the water charges it billed to respondent. Similarly, petitioner elicited no proof to justify the alleged arrears of $6,007.79 at March 1987, the $10 bank charge, or the $1,500 included in the petition as "legal”. The chart below sets forth the amounts which I find came due, and which were paid during the relevant periods.
Due to Petitioner
Paid by Respondent
Prechapter 11 $ 69,066.90 $ 5,545.08
During chapter 11 $ 95,583.01 $ 74,709.88
Postchapter 11 to date of petition $ 37,296.84 $ 15,590.16
Postpetition through January 10, 1989 $ 44,970.47 $ 28,180.32
$246,917.22
$124,025.44
The facts regarding the security deposit are that respondent never received interest and did not press a demand until it answered the petition; its president testified he assumed the fund was there, and growing for respondent’s benefit. Petitioner does not deny the existence of the fund or of the obligation to pay interest; it states that the deposit "was not kept in an interest bearing account and no interest was ever *222 paid to the tenant during the relevant years of this proceeding.”
Based on the foregoing, as may be seen from the chart set forth above, respondent’s payments leave it in arrears for $19,751.34 in prechapter 11 rent and $103,140.44 in rent accruing from the later portion of the chapter 11 period through January 10, 1989, for a total of $122,891.78. I also find that respondent is entitled to press its claim to set off the «interest which should have been earned on the security deposit.
DISCUSSION
The only significant issue raised in this proceeding concerns the application of the payments made during the chapter 11 period. The defenses of payment and accord and satisfaction are without merit. The motion to amend the petition should be granted. The interest earned, or which should have been earned, on the security deposit is properly a setoff under paragraph 31 of the lease in reduction of the amount awarded to petitioner, although the principal amount of the deposit should be retained by it until the termination of respondent’s tenancy.
If the issue of the application of the chapter 11 period payments were decided in favor of petitioner, subject only to the failure of proof of certain items and the setoff of the interest on the security deposit, the petition would be proper and petitioner would be entitled to judgment. Although the issue is analyzed differently than urged by petitioner, respondent’s motion to dismiss the petition is denied and petitioner is awarded judgment in its favor.
The date of the filing of a petition under the Bankruptcy Code (11 USC § 101 et seq.) is a date of cleavage. All obligations due and owing as of that date are prepetition claims. All obligations incurred on or after that date are expenses of administration. In a case under chapter 11, absent the appointment of a trustee, the debtor continues to operate its business as a debtor in possession. The debtor with an ongoing contractual relationship with a third party must assume the contract in order to continue it; if the debtor wants to terminate the relationship, the remedy is to seek to reject the contract. When the debtor has been in default under a contract prior to filing its bankruptcy petition, whether or not the other party had taken action to enforce its rights under *223 nonbankruptcy law, that party must seek permission of the Bankruptcy Court to continue to enforce its rights or to commence enforcement in a nonbankruptcy forum. This is because, under section 362 of the Bankruptcy Code, the commencement of a case under the Bankruptcy Code operates as an automatic stay of all actions against a debtor to enforce claims which arose prior to the petition date.
The Bankruptcy Code has specific provisions in section 365 governing the contractual relationship between a debtor and a third party where their contract is a lease of real property. Under section 365 (d) (3) of the Bankruptcy Code, a debtor in possession is obligated to "timely perform” its obligations under a lease which arise on or after the date it files its chapter 11 petition. Any payments not so made have priority status as expenses of administration under section 507 (a) (1) of the Bankruptcy Code. If a lease is assumed, all defaults must be cured while, if a lease is rejected, subject to the limitations in section 502 (b) (6), all nonadministration expense obligations are general unsecured claims. Included in this category are all obligations of the debtor as of the date of its petition and, as limited, damages for breach of the lease.
Most chapter 11 cases conclude either as successful reorganizations or as conversions to liquidation under chapter 7 and, as indicated above, the Bankruptcy Code’s provisions govern the treatment of creditors’ claims against the estate of the debtor. The Bankruptcy Code, however, is silent regarding the relationships between those interests when a chapter 11 case is dismissed, as respondent’s was, under section 1112 of the Bankruptcy Code.
Payments made by a chapter 11 debtor in accordance with the Bankruptcy Code must be credited by the recipient on account of the obligations which the debtor is required by the Bankruptcy Code to honor. To hold otherwise would undermine the integrity of the bankruptcy process. During the case a creditor may not be paid on account of prebankruptcy claims. For that reason the ministerial actions of petitioner’s employees of crediting the chapter 11 payments to prechapter 11 debt have no validity. That being so, upon dismissal of the case, petitioner may not reallocate the chapter 11 payments to what was a frozen general unsecured claim as of the date of the chapter 11 petition.
Notwithstanding the foregoing conclusion, respondent is incorrect in its position that, except as the Bankruptcy Code *224 required it, petitioner accepted those payments as an accord and satisfaction or waived its rights under paragraph 24 of the lease.
"A waiver is the voluntary abandonment or relinquishment of a known right. It is essentially a matter of intent which must be proved * * *. While waiver may be inferred from the acceptance of rent in some circumstances, it may not be inferred * * * to frustrate the reasonable expectations of the parties embodied in a lease when they have expressly agreed otherwise.” (Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442, 446 [1984].) Here, where the Bankruptcy Code barred petitioner from doing otherwise, even undisputed application by petitioner of respondent’s chapter 11 payments to chapter 11 obligations would not constitute a waiver of any right. (Malek v Cruz, 74 Misc 2d 448, 452 [Civ Ct, NY County 1973].)
The "OK” notations on respondent’s checks made by petitioner’s employees were no more than internal notations. They certainly were not acknowledgements of the abbreviated legends placed by respondent’s president on the face of most of the checks. Indeed, the crediting by petitioner of the payments to the oldest obligations refutes this notion. Moreover, the legends on the face of the checks were placed there for respondent’s convenience. (Pincus-Litman Co. v Canon U.S.A., 98 AD2d 681 [1st Dept 1983].) They were not endorsements let alone restrictive endorsements. Section 3-202 (1) of the Uniform Commercial Code (UCC) states, in pertinent part, that an instrument is "negotiated by delivery with any necessary indorsement”. An endorsement for negotiation is one made on the reverse of the check in the name of or for the account of the payee or subsequent holder. (See also, UCC 3-205, governing restrictive endorsements.)
To support its defense of accord and satisfaction, respondent must proffer more than the facial notations on its checks. "An essential component of an accord and satisfaction is a clear manifestation of intent by the debtor tendering less than full payment of a disputed unliquidated debt, that the payment has been sent in full satisfaction of the disputed claim” (Manley v Pandick Press, 72 AD2d 452, 454 [1st Dept 1980]). Here, there is no evidence that respondent had the required intent or that, having that intent, it was conveyed to petitioner. Petitioner cannot be said to have assented as a matter of law (Hudson v Yonkers Fruit Co. 258 NY 168 [1932]; 15 Williston, Contracts §§ 1854-1856 [3d ed]). The testimony re *225 vealed that the thrust of the negotiations between the parties was to extend, and perhaps modify, payment of the arrears over a period of time. Those negotiations were not designed to resolve respondent’s disputation of the amount due but rather were good-faith efforts by both sides to keep respondent in possession notwithstanding its financial difficulties. Accordingly, while the payments made during respondent’s chapter 11 period must be credited to the charges incurred during that period, all subsequent payments may be credited by petitioner to the prechapter 11 arrears (2765 Ocean Ave. v Roth, 33 NYS2d 418 [1942]).
As a result, respondent is in arrears for most of the months for which base rent is sought in the petition, as well as for the 1988-1989 tax escalation identified therein. Recalculating which of the earlier tax escalation bills is to be credited with payments made by respondent is unnecessary for the purpose of this decision.
Petitioner is not precluded by the intervention of the chapter 11 case from seeking prechapter 11 rent in a summary proceeding now. Acceptance of the payments made by respondent during the chapter 11 case, even if they were properly applied to obligations incurred during that period, was not a waiver by petitioner of respondent’s earlier defaults because petitioner was entitled to rely upon the protections afforded it by the terms of the Bankruptcy Code. Section 365 is designed to preserve the status quo between lessor and lessee by the current payment of bankruptcy period obligations until a lease is assumed or rejected. In the former situation the lessor is made whole and, in the latter, possession is ultimately restored to the lessor who also receives a dividend on its claim.
Moreover, under New York law, there is no strict limitation on the timeliness of a summary proceeding.[2] Far from lulling respondent into a sense that petitioner had abandoned any claims during the months after the chapter 11 case was dismissed, petitioner commenced this proceeding only when it concluded that there was no other way to enforce its rights to the money due to it, or to possession of its property. In this situation, the case of Gramford Realty Corp. v Valentin (71 *226 Misc 2d 784 [Civ Ct, NY County 1972]), and its progeny, are irrelevant. (See also, Malek v Cruz, 74 Misc 2d 448, supra.)
Respondent’s objection to petitioner’s application to amend its petition to cover charges incurred after October 3, 1988 is without merit. Respondent has suffered no prejudice. It was billed timely for the charges incurred during the period between commencement of this proceeding and the trial. Neither side, nor the court, would benefit from a multiplicity of pending actions between the same parties. (Solow v Wellner, 142 Misc 2d 383 [Civ Ct, NY County].)
Section 7-103 et seq. of the General Obligations Law govern the maintenance of security deposits by landlords and the interest to be earned and paid thereon. Under section 7-103, an interest-bearing security deposit is to be separately maintained in a banking organization paying the prevailing rate. Except for an annual fee to the landlord equal to 1% of the fund so deposited, the balance belongs to the tenant. Petitioner, and apparently its predecessors, failed to segregate the $10,000 deposited by respondent in 1978. Under the circumstances, the CPLR governs the amount to be awarded (CPLR 5001). The rate under CPLR 5004 was 6% per annum for the lease years prior to June 25, 1981 and 9% thereafter. Accordingly, respondent is entitled to set off $8,705[3] against the sum of $122,891.78 to be awarded to petitioner.
Based upon the foregoing, petitioner is entitled to a final judgment of possession against respondent by reason of the nonpayment of rent in the sum of $114,186.78 and judgment is to be awarded to petitioner against respondent for said amount. The issuance of a warrant is to be stayed for five days from the date of filing this decision.

. Paragraph 28 of the lease contains a blank in the space for respondent’s percentage share of water use.

. If there were, and it had not expired prior to the bankruptcy filing, under section 108 of the Bankruptcy Code (11 USC), the running of that period would have been tolled until the section 362 stay was lifted when respondent’s chapter 11 case was dismissed. (See, In re Morton v National Bank, 866 F2d 561 [2d Cir 19891.)

. $1,655 accrued October 1, 1978 to June 24, 1981 and the balance thereafter, calculating each year separately at the statutory rate.