Harold Fertig, J.
Petitioners commenced this summary proceeding to recover possession of a one-family residence from the respondent tenant and asks for judgment for the rent for the months of September and October, 1976. On September 6, 1976, the parties entered into a lease wherein John Kekllas and Helen Kekllas, as landlord, leased to Mr. Fred Saddy, as tenant, the premises known as 61 George Street, Manhasset, New York. The term of the lease was to commence on September 7, 1976 and end on May 7, 1977 and the monthly rent was to be $575. The landlord had purchased the premises in the beginning of July, 1976. At the time of the purchase, the premises were in disrepair, and there were strong odors of cats and cat urine in the garage, the basement of the premises and in and about a dinette area of the kitchen. During the summer, the landlord made substantial repairs to the premises including his decorating by painting and wallpapering. Prior to the wallpapering and painting, the landlord contracted with Checkmate Exterminators to treat the premises for the odor of cat urine, which work was done by the exterminator and for which the landlord received a guarantee for a period of three months that the odor would not reoccur. During the month of August, on several occasions the tenant visited the premises, sometimes with his wife and at times without his wife, to examine the premises and he subsequently entered into the lease referred to above. Two days prior to the execution of the lease, the tenant delivered to the landlord a check in the amount of $1,150 in payment for the first month’s rent and for security in the amount of *1044 $575. Payment on that check was stopped by the tenant and no money has been received by the landlord from the inception of the lease until this hearing, although the landlord has made repeated demand. After the tenant moved into the premises, it was discovered that there was a gas leak due to a high pilot light on the stove that went out. This was remedied by the gas company. There was a leak in the hot water tank due to a defective valve, which had been repaired. Water coming out of the hot water faucet showed evidence of rust in the hot water system.
The tenant had moved into the premises on September 8, and on September 10 Mrs. Saddy left the premises due to complaints; which she had of nausea and burning eyes. The odor of cat’s urine, which was on the premises in July and which was treated by the exterminator, returned in September, which odor became offensive to the tenant. Evidence was presented to show that the prior owners, a mother of approximately 75 years of age and a daughter in her mid-50’s, resided in the house for several years and that during that period of time they housed anywhere from two to four cats. One apparently was kept in the garage, one in the basement and one or two in the remaining portions of the house. There is no question that the odor of cat urine was present at the time the petitioner purchased these premises, and this court finds that although that odor was treated, it did return to the premises. The tenant claims that the odor in question and the other conditions such as rust in the water, leaks and windows which were stuck, apparently from new paint on them, were sufficient for the court to find that the landlord defaulted in its warranty of habitability as set forth in section 235-b of the Real Property Law.
This court finds that the odor which permeated the premises and which was stronger in certain areas of the premises did breach the provisions of section 235-b of the Real Property Law in that it has subjected the occupants of the premises to conditions which would be dangerous, hazardous or detrimental to their life, health or safety (Tonetti v Penati, 48 AD2d 25). In that case, there was an odor of dogs which the plaintiff said could be fumigated and which persisted notwithstanding the efforts of a cleaning service retained by the plaintiff to rid the area of that odor. Those facts are analogous to the facts in this case where although the plaintiff made an effort to rid the premises of the odor of cat’s urine by the hiring of an *1045 exterminator, that odor persisted, or in the very least returned, making the continued habitation of the premises detrimental to the health and safety of the occupants. Section 235-b of the Real Property Law codified the principles set forth in the Tonetti case, and for the purposes of that section, any breach would be considered a breach of contract and the damages resulting from such a breach are determined by the same principle of law applicable to a breach of any contract.
Unlike the Tonetti case, this defendant has not vacated the premises and this court is faced with a question of what damages have been proven by the defendant to recover on its counterclaim for the breach of contract between the parties. There is no question that the plaintiff has made out its prima facie case that the defendant has occupied the premises for the months of September and October and that the rental for those two months equals $1,150 in accordance with the terms of the lease. The tenant has counterclaimed for a total of $2,309.75 and it has been determined that a landlord’s violation of a warranty of fitness for use may result in damages in excess of the amount of rent sought in nonpayment eviction proceeding (Amanuensis Ltd. v Brown, 65 Misc 2d 15). One item of damage recognized for the breach of such an implied warranty of habitability would be the reasonable and actual costs incurred by a tenant who undertakes the repair of the premises himself (Marini v Ireland, 56 NJ 130; Garcia v Freeland Realty, 63 Misc 2d 937) but such claim for repairs should be preceded by a notice to the landlord giving him a reasonable opportunity to repair (Pantalis v Archer, 87 Misc 2d 205). In this case, no opportunity was given the landlord to remedy the defect. The petitioner on August 4, 1976, received a guarantee from the exterminator who deodorized the area that that odor would not return. That guarantee was good until November 4, 1976, and would have been available to the petitioner had the petitioner been informed of the specific problem.
Insofar as the other items of the counterclaim were concerned, the rust in the hot water substantially disappeared and the windows which were difficult to open and close were substantially remedied.
The only other measure of damages which the court can consider is the possibility of an abatement of rent in which the measure of damages would be for the difference between the contract price, that is, the agreed rental of the premises *1046 and the actual market value of these premises in its deteriorated condition at the time of the breach (City of New York v Pike Reality Corp., 247 NY 245; Todd v Gamble, 148 NY 382; Faust v Guzman, NYLJ, Dec. 27, 1973, p 14, col 7; 33 NY Jur, Landlord and Tenant, § 109). In some cases the courts have granted a total abatement on the ground that the premises are totally worthless (Amanuensis Ltd. v Brown, 65 Misc 2d 15, supra; Mannie Joseph, Inc. v Stewart, 71 Misc 2d 160) but in this case the premises were not worthless and the tenant continues to occupy them with his children although his wife has left. In 1974, in the case of Steinberg v Carreras (77 Misc 2d 774) the Appellate Term in the First Department determined that since there was no adequate proof by the testimony of an expert as to what the reduced value of the premises in question was, the court could not grant such an abatement. In 1976, the Legislature added a provision to section 235-b of the Real Property Law (L 1976, ch 837) which provided that the tenant could prove damages without the necessity of having expert testimony. In B.L.H. Realty Corp. v Cruz (87 Misc 2d 258) decided in May, 1975, the court found that by reason of the landlord’s violation of the warranty of habitability, and based upon the same proof that made out the landlord’s breach, the tenant suffered damages equal to 50% of the rental which was deposited in court by the tenant.
In this proceeding, there was evidence of the cost to remove the odor, which was excessive in comparison with the rent, but the tenant cannot recover such cost for the reasons set forth above (see, also, 28 ALR2d 484, § 26). Here the tenant should receive damages measured by the difference in rental value. However, although the tenant’s proof need not be by expert witnesses (Real Property Law, § 235-b; B.L.H. Realty Corp. v Cruz, supra), that does not mean that there need not be any proof of such damages and there was no evidence of any kind as to the reduced rental value of the premises due to the existence of the odor. Any award of an abatement of rent, without testimony by the tenants or any witness, professional or otherwise, would be purely conjecture and is speculative (Goldner v Doknovitch, 88 Misc 2d 88; Electronic Corp. of Amer. v Famous Realty, 87 NYS2d 169, affd 275 App Div 859; Steinberg v Carreras, 77 Misc 2d 774, supra). Under the circumstances, the tenant is entitled to recover at least nominal damages and is accordingly awarded nominal damages of 6 cents.
*1047 The landlord’s default under their contract has not been such as would cause them to lose all right to recover.
Since it is the opinion of this court that the continued odor on the premises is a violation of the landlord’s warranty of habitability as being damgerous to the tenant’s life and health, the proceedings to dispossess are stayed (Real Property Actions and Proceedings Law, § 755, subd 1, par [b]) until an order shall be made vacating such stay pursuant to Real Property Actions and Proceedings Law (§ 755, subd 1, par [c]). The tenant shall deposit with the clerk of the court the sum of $1,150 less 6 cents, now due for the rent for the months of September and October, 1976, pursuant to Real Property Actions and Proceedings Law (§ 755, subd 2).
Upon failure of tenant to make such a deposit, the stay may be vacated pursuant to section 755 of the Real Property Actions and Proceedings Law and the petitioners may enter judgment awarding them possession of the premises, together with a judgment for $1,150 less 6 cents.
Upon deposit of $1,149.94, the entry of judgment shall be stayed pending the elimination of the" condition, provided tenant gives the landlord access to the premises for that purpose, and upon such compliance, payment shall be made to the petitioner. In the event respondent fails to give petitioner access to the premises for the purposes set forth herein, petitioner may apply to the court to vacate the stay pursuant to subdivision 2 of section 755 and may enter judgment for possession and for payment to be made to petitioners of the sum deposited.
In all other respects, respondent’s counterclaims are dismissed and neither party is awarded the legal fees requested.