OPINION OF THE COURT
Diane A. Lebedeff, J.
This nonpayment proceeding raises the issue of the application of the warranty of habitability to demolition of one half of a multiple dwelling and construction on that land. It was determined at an earlier stage of the proceeding that the tenants could “object to the use to which areas which have been part of or appurtenant to” the entire multiple dwelling as it existed prior to the severance and demolition. The court also has already found that “[t]here is no question that noise may be a basis for finding a breach of the warranty of habitability”. (See Mantica R Corp. NV v Malone, NYLJ, Oct. 15,1980, p 12, col 5.)
A trial has now been held at which the tenant argued as a factual matter that a violation of the warranty of habitability has and is still taking place and urged that a rent abatement be granted. The testimony before the court clear *954 ly and credibly established that the noise and dust from the demolition and construction were annoying, irritating and disrupted the lives of occupants of the multiple dwelling. As to the individual respondents, only William Corley appeared and he testified that Ena Malone had moved from the apartment and had established another residence. At the time that they had rented the apartment, it was shown that at least William Corley had knowledge of the plans for the immediate commencement of demolition and construction and that he and Ena Malone had previously resided in the half of the building which has now been demolished.
The owner presented evidence clearly establishing that the demolition and construction were accomplished in a lawful and reasonable manner. The owner demonstrated that the most disruptive noise — noise resulting from boring through rock for foundations — was produced on a parcel which was not part of or appurtenant to the multiple dwelling. The tenant did present one copy of a violation placed by the New York City Environmental Control Board, on which the hearing officer noted: “did not find continuous violation of statute or current violation of noise levels.” No evidence of any other noise violations found by that board was presented.
ASPECTS OF THE WARRANTY OF HABITABILITY
The court is faced with a claimed breach of the warranty of habitability by lawful activity, which is a novel issue. As a starting point, an examination of the parameters of the warranty of habitability is appropriate.
Section 235-b of the Real Property Law, defining the warranty of habitability, contains three different warranty aspects, which were re-emphasized by the Court of Appeals in Park West Mgt. Corp. v Mitchell (47 NY2d 316, 325, cert den 444 US 992). As amplified by language from that opinion, the implied warranties are that housing is:
(1) Not dangerous to life, health or safety: Conditions which are “substantial violation [s] of a housing, building or sanitation code” are generally those which are dangerous, and thus those codes provide a “bright-line standard” for a determination of a violation of this branch of the war *955 ranty. (Park West Mgt. Corp. v Mitchell, 47 NY2d, at p 327.) Because New York City has comprehensive codes, a determination of a violation of those codes is generally sufficient to provide guidance on this aspect of the warranty.
(2) Habitable and usable: This branch concerns dwellings which are fit for human habitation and the existence of “those essential functions which a [dwelling] is expected to provide” (supra, p 328). The covenant of quiet enjoyment, upon which the theory of constructive eviction is based, “include [s] a duty to refrain from any act or omission which would render the premises unusable by the tenant” (supra, p 323). These two latter concepts are clearly encompassed by this branch of the warranty.
(3) In accord with reasonable expectation: This aspect of the warranty, as stated in the statute (Real Property Law, § 235-b), is that the condition of the premises is in accord with “the uses reasonably intended by the parties”. Under this branch fall other aspects of housing maintenance which are not covered by the two other categories, examples of which are protection of an amenity such as air conditioning in Whitehouse Estates v Thomson (87 Misc 2d 813), and the need for “predictability” of services in 111 East 88th Partners v Simon (106 Misc 2d 693). Two special notes must be added to supplement this listing.
First, frequent arguments arise regarding whether annoyance and inconvenience may serve as a basis for a finding of a breach of the warranty of habitability. It is clear that under the covenant of quiet enjoyment, annoyance and inconvenience would not breach that covenant. (Goldner v Doknovitch, 88 Misc 2d 88, 91, upon remand NYLJ, Jan. 12, 1977, p 14, col 2.) The entire warranty of habitability, on its face, is a broader and more encompassing theory. Based upon a close analysis, annoyance and inconvenience could well serve as a basis for a determination of a breach of the third branch of the warranty and as a factor to consider in relation to the breach of the first branch of the warranty.
Second, while the statute itself provides that warranty protections may not be waived, as was confirmed by the Appellate Term, First Department, in 350 Assoc. v Feld *956 man (NYLJ, Dec, 18, 1978, p 13, col 6), necessity does require that in relation to the reasonable expectation protected by the warranty that the “bargain” struck by the owner and the tenant be considered. In a rare case in which a court assessed the “bargain”, Judge Lorraine Miller considered the dust and inconvenience produced during rehabilitation work and found that the tenants received “a better ‘bargain’ than * * * originally contracted”, and found the warranty satisfied. (KZHB Assoc. v Beards, NYLJ, Jan. 25, 1980, p 12, col 5.) Such an approach to the warranty of habitability is often sensible for if a tenant receives either more or the same as expected then there is no substantial ill to be corrected and there is no reduction of rental value of the dwelling unit, which would lead to the imposition of no more than nominal damages or to no damages.
With the foregoing background, an assessment of the claimed breach of the warranty of habitability may be made.
application
On the facts here, the court finds that the consequences of lawful construction and demolition did not breach either the first or second branch of the warranty of habitability. There was no adequate proof of a consistent violation of the noise codes and the single violation found by the government agency mandated with the responsibility to enforce the code contained the notation that illegal noise was found not to be the normal course of conduct on the site.
Much as an occasional noise from neighbors is one of the “penalties of modern [society] ”, as noted in Justice Ct. Mut. Housing Co-op. v Sandow (50 Misc 2d 541, 546), it must befall a tenant in a midtown Manhattan building that a tenant will reside near to almost every construction site. It also cannot be overlooked that demolition and construction are lawful activities and part of the economic development and life cycle of New York City. Without ignoring that the noise involved may be more than noise from neighbors or, as was present in Central Park Gardens v Klein (107 Misc 2d 414), an apparently uncontrolled barking dog *957 in another apartment, the noise codes as they relate to construction and demolition must be held to be guides for those activities when a court considers the first two branches of the warranty.
It is under the third branch of the warranty of habitability — failure of reasonable expectation — that relief must be granted, if it is to be granted at all. A difficulty arises because of the particular facts involving this tenant, who moved into the unit which is the subject of this proceeding while aware of the pendency of the demolition and construction, yet who also resided in the building in another unit in the demolished wing and moved to facilitate the demolition.
Had the tenant been a new tenant, the court would rule that there had been no breach of the warranty. The situation of a new tenant would be no different from that of a tenant moving into a building which has a temporary certificate of occupancy with the knowledge that additional work will be done, it is part of such a tenant’s expectation that there may be dirt and noise and some annoyance and inconvenience.
Had the tenant continuously resided in the still existing portion of the multiple dwelling before contemplation of the demolition, there clearly would have been an expectation that noise would not occur in the now demolished apartments and common areas to the extent it occurred during the demolition and construction. In determining any damages, the court must take into account the demonstrated efforts of the owner to minimize the impact of the work. On the facts presented here, the damages, while not nominal, would not be large.
Because of the pre-existing tenancy here, the court holds that the tenant is entitled to some damages under the warranty. As to the measure of damages, the testimony here established that the tenant moved freely and without coercion or significant consideration from the owner, as well as agreed upon a rental for the new unit which was based upon a knowledge of the demolition .and construction plans. In addition, there is some question regarding the good faith of this tenant’s claim, including, among other *958 facts, that the nonpayment of rent commenced before any noise occurred. Based upon the foregoing, the court finds nominal damages of 6 cents per month to be appropriate as to respondent Corley.
As to respondent Malone, who did not appear during any point of the proceedings, the trial record supports the conclusion that she vacated the apartment long before this proceeding was tried. As to respondent Malone, a judgment of possession for the petitioner shall enter.
There being no claim for attorney’s fees on the part of the owner, such judgment shall not include costs or disbursements on behalf of either party.