OPINION OF THE COURT
John A. Milano, J.
ISSUE
Is a burglarized and inoperable doorlock such an “exigent circumstance” that 18 hours, after notice of the occurrence, would constitute sufficient and reasonable opportunity on the part of the landlord to repair the defective lock, in order to remove the violation and secure the tenant’s safety and peace of mind or to be obligated as a matter of law, to reimburse the tenant for the reasonable value of her expenses, should the tenant undertake to make the repairs herself?
THE FACTS
Tenant, Nicoletta Gravagna, a senior citizen, has resided for approximately five years in apartment 5J at premises 53-00 65th Place, Maspeth, Queens County. The entrance door of the tenant’s apartment has two locks; one maintained and secured by the landlord and the other installed by her after entry. On September 3,1981 at about 6:30 p.m. the tenant, upon entering her apartment, experienced a frightening and traumatic occurrence. She discovered a burglar, who fortunately did not physically assault or injure her, but did abscond with her savings and some personal jewelry. Both locks of her entrance door had been jimmied, were severely damaged and inoperable. The ten *643 ant immediately reported the burglary to the police and to “George” the superintendent who lives on the premises. The tenant, in a state of fear and apprehension, showed the damaged door to George and demanded that the door locks be repaired immediately to which George replied, “Where am I going to get a lock” and in fact indicated that it would take two to three days to do so. The next day, at about 12 noon, the tenant called a locksmith and made an appointment.. At 1:00 p.m. the tenant called the business office of the landlord and spoke to a person (identified later during the course of the trial as Hilda, another senior citizen). The tenant related what had occurred and Hilda reportedly advised the tenant to make the repair and to send the bill to Herbert Hoffman, the registered managing agent. The locksmith arrived at the premises soon thereafter and another call was placed to the said business office and the locksmith spoke to Hilda in regard to the work he was about to undertake which subsequently took him about nine hours to complete. The locksmith rendered his bill for his services in installing two new locks. The tenant paid the bill but is requesting only $120 representing the expenses of a new “Morris” lock and installation to replace the landlord’s prior damaged and inoperable lock.
The expenses of the other lock and installation of same were borne by the tenant. At no time subsequent to the occurrence did the landlord’s agents communicate with the tenant in regard to advising the tenant that it would undertake the repairs and requesting reasonable opportunity to do so. At the trial, a witness for the tenant corroborated the damaged locks and the replacement of same with new locks. The only witness produced by the petitioner landlord was one Paul Hoffman, an agent and son of the registered managing agent, Herbert Hoffman. He admitted that a “Morris” lock would cost, without installation, between $60 to $70, and that the cost of installation where a lock had been damaged would involve more than normal cost. The witness conceded that the particular lock could be picked up in one day. He identified “Hilda” as being the senior citizen in his office. He never saw the apartment of the tenant since the occurrence and never saw the damaged or new locks. He admitted that the first time he knew *644 of the matter was when he saw the tenant’s check with her deductions for the expenses of replacing the landlord’s lock. He didn’t know whether George the super had reported the burglary and damage to his father, Herbert Hoffman. The attorney for the petitioner argues that the tenant has failed to prove that she was authorized by the landlord and his agents to make the repairs and even if “Hilda” advised the tenant to do so that the tenant has failed to prove that “Hilda” was authorized to make such an approval.
THE LAW
The Housing Maintenance Code provides that the owner of a dwelling shall provide a key lock in the entrance door to each dwelling unit and at least one key. In a class A multiple dwelling such door shall be equipped with a heavy duty latch set and a heavy duty lead bolt operable by a key from the outside and a thumb-turn from the inside. (Administrative Code of City of New York, § D26-20.05, subd a.)
Prior to the recognition of the implied warranty of habitability in 1971 in the case of Amanuensis, Ltd. v Brown (65 Misc 2d 15) when a landlord had not covenanted to repair, but was under a duty to repair by virtue of a statute, then the rule permitting a tenant to make repairs upon the failure of the landlord to do so, did not apply. “Because the statute * * * places the burden on the owner to keep the premises in good repair,” said the Appellate Division, “it does not follow that the lessee may enforce that obligation.” (Emigrant Ind. Sav. Bank v 108 West 49th St. Corp., 255 App Div 570, 575, affd 280 NY 791.)
But in Garcia v Freeland Realty (63 Misc 2d 937) the court noted that the landlord had a statutory duty to repair and paint the apartments in the multiple dwelling. Though not recognizing an implied warranty of habitability, in allowing the tenant the cost of materials and minimum wage allowance for his time in painting, the court took a different tack from previous decisions which had held that duties statutorily imposed are enforcible by the municipality only. In Jackson v Rivera (65 Misc 2d 468), the court not only recognized the warranty in this nonpayment proceeding but allowed the tenant’s claim for $22 for the repair of *645 the tenant’s toilet. The court stated {supra, at p 471): “a tenant may make repairs and deduct their reasonable cost from rent when (1) the condition in question creates an emergency seriously affecting the habitability of the home, (2) the landlord has refused to make the repairs, and (3) the condition cannot reasonably be permitted to continue until code enforcement proceedings have run their course.” (Italics supplied.) In Kekllas v Saddy (88 Misc 2d 1042), the court recognized repair and deduct as a valid remedy but because no notice was given to the landlord, the tenant could not recover. The question of excessive cost to remove the odor complained of was also considered by the court in denying relief to the tenant. Thus, in order for a tenant to recover in these repair and deduct situations, it is apparent that the tenant must give notice to the landlord (see Altz v Lieberson, 233 NY 16, 18), and that the condition or violation complained of must be substantial in that it affects the habitability of the premises and that the landlord has either refused or has not repaired in reasonable time after reasonable opportunity to repair has been given to the landlord. A tenant making the repairs under these circumstances will be allowed to set off or deduct from the rent provided that the cost is reasonable and not excessive.
In 1975, New York passed the warranty of habitability law (Real Property Law, § 235-b) effective August 1, of that year, which codified the existing case law. (Park West Mgt. Corp. v Mitchell, 47 NY2d 316.) The Court of Appeals gave recognition to the remedy of a rent abatement by reason of the diminuted value of the premises caused by conditions or substantial violations affecting the habitability of the premises. Other remedies were not excluded since those were not before the court. (Park West Mgt. Corp. v Mitchell, supra, p 329; see Muldoon, The Repair-and-Deduct Remedy in New York, NYLJ, June 18, 1980, p 1, col 2.)
FINDINGS
The court finds that the building premises of the tenant is a class A multiple dwelling; that the landlord through its superintendent agent had notice of the occurrence on or about 7:00 p.m. on September 3, 1981; that the defective locks on the door of the tenant after the occurrence created *646 an emergency seriously affecting the habitability of the tenant’s apartment; that the landlord had ample and reasonable opportunity to make the repairs and in fact did not, after notice, avail itself of that opportunity and further never advised the tenant that it would make the repairs; that the reasonable cost of the landlord’s lock and installation is $120; that the work was done and that the said $120 was paid by the tenant to the locksmith; that the employee Hilda did authorize the repairs by the tenant and reimbursement for same but even if, arguendo, she did not, or could not, authorize that as a matter of law, the tenant is still entitled to reimbursement of $120 from the landlord.
CONCLUSION
The tenant during the course of the trial waived the prima facie case of the landlord and conceded owing $203.83 for rent through October 31, 1981. For all of the reasons set forth above, an allowance of $120 is granted the tenant and this setoff reduces the balance of rent owed to $83.83.
Accordingly, final judgment for the landlord, in the sum of $83.83 with a stay of the issuance of the warrant to November 19, 1981. All claims by the landlord for costs and legal fees are dismissed with prejudice.