OPINION OF THE COURT
Rockwell D. Colaneri, J.
The defendant was a tenant of the plaintiff under a written lease. The plaintiff is a copartnership and owns and manages 366 apartments in a garden apartment complex located at Selden, New York.
The defendant is a single woman with an eight-year-old son (at time of the within incident), and lived in apartment No. 15 on the first floor of building No. 15.
Prior to January, 1983, the defendant suffered the traumatic experience of having a “peeping tom” peek through her window. This event was reported to the management.
At the end of January (or in the early part of February), 1983, two unknown men attempted to burglarize her apartment at 3:00 a.m. She was awakened when one of the burglars started to rip the screen from the sliding glass door. She was able to ward off the criminals, but, needless to say, she was terrified. She scooped up her child and fled to her mother’s home, never to return to the apartment.
The term of the lease expired on May 26, 1983. The defendant had deposited $930 as rent security with the *798 plaintiff. The plaintiff landlord was able to rerent the apartment before May 26,1983, and is seeking rent for the months of February and March of $485 (rent) and $24.25 (late charges). The landlord claims that it cost $100 for a “re-rental fee” as well as $249.95 for painting and repairs. The landlord claims that there is a total of $1,318.45 due as a result of the defendant’s flight. The landlord applies $980.37 (security plus interest) to the alleged debt leaving a balance of $338.08 due to the landlord. Attorney’s fees in the sum of $250 are added, and the landlord commenced action for the sum of $588.08.
The defendant contends that the plaintiff had breached the lease by breaching the implied warranty of habitability (Real Property Law, § 235-b), and, also, by breaching the express warranty of use and quiet enjoyment.
The defendant’s position is that the landlord should have provided some security for the protection of the tenants. The defendant does not seek a return of the security deposit that she made.
The issue posed by the defendant is unique. Should the landlord of a large garden apartment complex in a rural or suburban community furnish protection to its tenants? Should the landlord protect its tenants against the depredations of burglars, thieves and other criminals?
This court is mindful of the cases of Brownstein v Edison (103 Misc 2d 316) and Sherman v Concourse Realty Corp. (47 AD2d 134). The fact situations in said cases differ from the facts in the instant case in that the landlords in both cases had provided special locks and buzzer systems on the front doors to prevent criminal types from intruding into high-rise apartment buildings in New York City.
In both cases the landlord had raised the rent to include the cost of the special locks and protective systems. In both cases the locks and protective devices were broken and inoperable. The tenant in the Brownstein case {supra) was murdered in the apartment lobby, and the tenant in the Sherman case {supra) was severely assaulted — again in the apartment lobby.
The courts in both cases held that the landlord had assumed the duty to provide some degree of protection to the tenants by providing these protective devices, and the *799 landlords in both cases were to render an essential service affecting habitability. Thus, when the locks and devices became inoperable, the landlord(s) breached the implied warranty of habitability.
Chief Judge Lawrence H. Cooke discussed the transition of the landlord-tenant law from the common-law concept of a tenant’s estate in land to the modern day theory that a lease is not an estate in land, but is a contract between the owner of real property and the occupier of real property. (Park West Mgt. Corp. v Mitchell, 47 NY2d 316.) It is held in said case that the landlord “is not a guarantor of every amenity customarily rendered in the landlord-tenant relationship” (p 327), and the warranty of habitability was not legislatively engrafted into residential leases for the purpose of rendering landlords absolute insurers of services which do not affect habitability. The statute (Real Property Law, § 235-b) was designed to give rise to an implied promise on the part of the landlord that both demised premises and areas within the landlord’s control are fit for human occupation at the inception of the tenancy, and the premises will remain so throughout the lease term.
In the instant case, there was no initial obligation on the part of the landlord to supply security devices for the protection of the tenants. After a number of years, however, the instant garden apartment complex has become the object of burglars and thieves, so that break-ins and thefts have become frequent. Mr. David Orenstein, the manager of the plaintiff’s complex, testified that there were approximately 5 to 10 burglaries each year in the entire complex. Mr. Orenstein, however, was quite evasive and vague about the actual number of burglaries.
If this court accepts the figure of (only) 10 burglaries per year as the number of burglaries committed in the subject premises, this amounts to one burglary in every 36.6 apartments. Thus, if we use this one statistic, and, if we extend this ratio over a period of years, almost 10% of the tenants in the plaintiff’s garden apartment complex will be victims of burglaries, thefts and worse over a three-year period.
Relying upon the reasoning of Chief Judge Cooke (Park West Mgt. Corp. v Mitchell, supra), this court shall extend *800 the concept of the implied warranty of habitability and make it applicable to the instant case. This court finds that living conditions in the plaintiff’s garden apartment complex had become dangerous and that the landlord had become obligated to take steps to protect its tenants by whatever means available to it.
Despite many notices to the plaintiff of thefts and burglaries committed in the plaintiff’s garden apartment complex, the landlord, herein, had not (and has not) taken any steps to protect its tenants. The plaintiff has thus breached the implied warranty of habitability, as well as, the express warranty of use and quiet enjoyment.
The defendant acted reasonably and properly when she fled the premises, since it became apparent to her that it was not safe to live in the apartment any longer.
Accordingly, judgment for the defendant dismissing the plaintiff’s complaint, with costs, to the defendant.