OPINION OF THE COURT
Alice Schlesinger, J.
The issues before this court are whether the landlord’s failure to provide its tenants with adequate security breaches *568 the warranty of habitability. Second, may the aggrieved tenant raise in this nonpayment summary proceeding a counterclaim seeking damages for the loss of property that allegedly occurred as a result of the landlord’s failure to provide adequate security.
In June 1987, petitioner commenced this nonpayment proceeding based on respondent’s failure to pay rent from October 1986 through May 1987. Ms. Braxton, the respondent, failed to answer the petition and the action came before me for an inquest. She appeared in court on the return date of the inquest.
Ms. Braxton stated that for a number of months she had complained to the landlord that the front door to her apartment was insecure and required replacement. This was never done. She stated that following her complaints an intruder forced open her front door and burglarized her apartment. Respondent asserts that she is entitled to damages for loss of property based on the landlord’s failure to replace the front door. Based on these allegations I set the matter down for an abatement hearing. Petitioner, 610 W. 142nd St. Owners Corp., objected to the hearing arguing that the alleged property damage was not recoverable in this nonpayment proceeding.
Prior to the date of the abatement hearing petitioner filed a motion to strike the counterclaim for property loss. The motion was returnable in Part 18. On the return date respondent failed to appear in Part 18. The motion was then granted upon default. While the motion referred to my decision setting the matter down for a hearing, petitioner apparently did not formally seek to have the motion referred to me.
I vacated the default as I found respondent’s failure to appear excusable. Respondent came to court on the return date of the motion but was confused as to which courtroom to appear in. She waited in room 325, the courtroom where she originally appeared on the date of the inquest. Respondent establishes as well a meritorious defense based on an alleged breach of the warranty of habitability. Therefore, I will now reconsider landlord’s motion on its merits.
Petitioner argues that pursuant to the lease Ms. Braxton has waived her right to interpose counterclaims in a summary proceeding. Secondly, petitioner citing Coronet Props. Co. v Lederer (NYLJ, Feb. 21, 1986, at 12, col 2 [App Term, 1st Dept]) argues that the counterclaim for damages as a result of a burglary is not directly related to this action for nonpay *569 ment of rent, therefore, the counterclaim must be severed. Petitioner asserts as well that the respondent is bringing this claim only to harass and intimidate petitioner from seeking rental arrears. In the alternative, petitioner seeks to depose respondent to defend against her counterclaims.
Respondent opposes the motion arguing that the property damage claim is directly related to the rent action. She states that when she moved into the apartment in April 1986, her front door was insecure and that she requested a new door. However, the prior landlord repaired the door instead of replacing it. Ms. Braxton asserts that the locks kept falling off the door and that the door could be pushed open even when secured by three locks.
She states that between April 1986 and December 1986 she complained weekly about her door. In October 1986, she complained about the door to her new landlord, petitioner. However, the door was not replaced. In November 1986, Ms. Braxton asserts that she stopped paying rent because she did not receive a new door. She states that because of her worry over being burglarized she did not feel safe in the apartment. As a result she began spending the weekends in her mother’s apartment. In December 1986, one of petitioner’s agents, a Morris Scharf, came to investigate her failure to pay rent. Ms. Braxton states that she told him that she would not pay rent until she received a new door. Mr. Scharf informed her that she would receive a door if she paid her rent. Ms. Braxton states that she refused to pay her rent until she received the door.
Six months later, in June 1987, Ms. Braxton was burglarized while she was at her mother’s apartment. Ms. Braxton asserts that the burglar entered the apartment through the defective front door and took her property valued at $1,760.
Since respondent is a pro se litigant- the court must take special care in determining whether she has asserted legally cognizable defenses and counterclaims. Ms. Braxton has raised an affirmative defense and counterclaim alleging breach of the warranty of habitability based on the landlord’s failure to provide adequate security. Her second counterclaim seeks damages for the loss of property that occurred as a result of the alleged burglary.
I. AFFIRMATIVE DEFENSE AND COUNTERCLAIM ALLEGING BREACH OF THE WARRANTY OF HABITABILITY.
In Park W. Mgt. Corp. v Mitchell (47 NY2d 316, 325 [1979]), *570 Chief Judge Cooke noted that section 235-b of the Real Property Law requires the landlord to impliedly warrant: "first, that the premises are fit for human habitation; second, that the condition of the premises is in accord with the uses reasonably intended by the parties; and, third, that the tenants are not subjected to any conditions endangering or detrimental to their life, health or safety.” (Emphasis added.) A breach of the implied warranty of habitability occurs where "in the eyes of a reasonable person, defects in the dwelling deprive the tenant of those essential functions which a residence is expected to provide” (supra, at 328). Housing codes are only a starting point to determine the landlord’s obligation to provide premises fit for human habitation; "[t]hreats to the health and safety of the tenant — not merely violations of the codes — determines the reach of the warranty of habitability” (supra, at 328).
While the "landlord is not a guarantor of every amenity customarily rendered in the landlord-tenant relationship” (Park W. Mgt. Corp. v Mitchell, supra, at 327), Chief Judge Cooke’s reasoning makes it clear that the scope of the warranty of habitability is broad. Trial courts considering whether the implied warranty has been breached have reached a similar conclusion. (See, for example, Anchef Realties Co. v Omberg, NYLJ, June 11, 1986, at 13, col 1 [Civ Ct, NY County] ["noise” from music studio constituted breach of warranty of habitability]; Mantica R Corp. v Malone, 106 Misc 2d 953 [Civ Ct, NY County 1981] [noise from demolition and construction as a breach of warranty of habitability]; Forest Hills No. 1 Co. v Schimmel, 110 Misc 2d 429 [Civ Ct, Queens County 1981] [constant construction work by landlord breached warranty of habitability]; Kekllas v Saddy, 88 Misc 2d 1042 [Dist Ct, Nassau County 1976] [landlord’s failure to remove cat odor in premises breached warranty of habitability].)
The landlord’s failure to adequately protect its tenants’ security breaches the warranty of habitability. The court takes judicial notice of the high-crime rate in New York City, especially in New York’s impoverished neighborhoods. A secure apartment door is the last line of defense against forced entry by intruders. The landlord’s failure to secure the apartment endangers the tenant’s safety and frustrates his or her ability to make reasonable use of the premises.
Other courts have concluded that the landlord has an affirmative duty to protect tenants and failure to do so is a *571 breach of the warranty of habitability. In Highview Assocs. v Koferl (124 Misc 2d 797 [Dist Ct, Suffolk County 1984]), the court held that where living conditions become dangerous the landlord was obligated to take steps to protect its tenants. In that case the landlord was on notice of the numerous thefts committed in the complex and failed to take action, thus breaching the warranty of habitability. In the case at bar a New York City landlord must be deemed to be on constructive notice that a defective door may lead to assault and/or theft.
In Brownstein v Edison (103 Misc 2d 316 [Sup Ct, Kings County 1980]) the court held that the landlord assumes a duty to protect its tenant within the scope of Real Property Law § 235-b once it installs door locks and obtains a rent increase therefor. Similarly, in the instant case petitioner undertook affirmative steps to repair respondent’s front door. However, respondent asserts that the front door was not properly repaired.
Additionally, the Housing Maintenance Code requires the landlord to provide a key lock in the apartment entrance door. (See, Jangla Realty Co. v Gravagna, 112 Misc 2d 642 [Civ Ct, Queens County 1981] [landlord’s failure to repair defective lock after being given notice of defect breaches the warranty of habitability]; see also, 111 E. 88th Partners v Simon, 106 Misc 2d 693 [Civ Ct, NY County 1980].) Clearly, the purpose behind this requirement is to protect the tenant and his or her property from criminal acts of third parties.[1]
Ms. Braxton has established a legally viable defense and counterclaim based on the warranty of habitability. She states that an intruder entered and burglarized her apartment, thus endangering her safety. Ms. Braxton asserts that she felt unsafe in the apartment based on the landlord’s failure to replace the door, forcing her to spend weekends away from her apartment. Accordingly, Ms. Braxton may be able to show that she was unable to use the premises as they were reasonably intended — i.e., to live securely in the apartment.
Finally, Ms. Braxton asserts that on numerous occasions she notified the landlord and his predecessor-in-interest that her door was defective. However, she states the landlord failed to *572 remedy the problem and for that reason she stopped paying her rent.
The Court of Appeals in Park W. Mgt. (47 NY2d 316, 329, supra) stated that "the proper measure of damages for breach of the warranty is the difference between the fair market value of the premises if they had been as warranted, as measured by the rent reserved under the lease, and the value of the premises during the period of the breach. "The court left open the issue whether remedies other than contract damages were available to the aggrieved party. Initially, courts held the landlord was strictly liable for the breach of the warranty of habitability, thus awarding consequential damages. (See, for example, Kaplan v Coulston, 85 Misc 2d 745 [Civ Ct, Bronx County 1976]; McBride v 218 E. 70th St. Assocs., 102 Misc 2d 279 [App Term, 1st Dept 1979]; Goodman v Ramirez, 100 Misc 2d 881 [Civ Ct, NY County 1979].)
Subsequently, the Appellate Division in Curry v New York City Hous. Auth. (77 AD2d 534 [1st Dept 1980]) held that Real Property Law § 235-b could not be extended to encompass the doctrine of strict liability. (Supra, at 536; see also, N. Town Roosevelt Assoc. v Muller, NYLJ, Oct. 27, 1980, at 6, col 4 [App Term, 1st Dept] [proof of value of books destroyed in apartment could not be considered as proper measures of damages as breach of warranty of habitability goes only to diminution in rental value].)
II. SEVERANCE OF COUNTERCLAIM SEEKING DAMAGES FOR LOSS OF PROPERTY
Clause 17 of the lease provides in pertinent part that the "[t]enant gives up any right to bring a counterclaim or set-off in any action or proceeding by landlord against Tenant on any matter directly related to this Lease or Apartment.” Courts are not bound by a lease provision waiving counterclaims and have the equitable power to disregard such a provision where the counterclaim is intertwined with the claim in the petition. (50 Ct. Co. v Wild, NYLJ, Feb. 21, 1978, at 13, col 1 [App Term, 1st Dept]; Randall Co. v Lobel Photography, 120 Misc 2d 112 [Civ Ct, NY County 1983]; Haskell v Surita, 109 Misc 2d 409 [Civ Ct, NY County 1981].)
In order to determine whether the counterclaim is inextricably intertwined with the claim asserted by petitioner the court must consider whether the counterclaim " 'has a direct relationship to the question of whether the landlord is entitled to *573 possession’ ” (Coronet Props. Co. v Lederer, NYLJ, Feb. 21, 1986, at 12, col 2 [App Term, 1st Dept], supra, citing Siegel, NY Prac § 576). In Coronet, the Appellate Term severed a counterclaim for "mental distress and emotional anguish” holding that it was not related to nor was it a defense to petitioner’s nonpayment claim.
Respondent’s second counterclaim for property damages sounds in negligence. It asserts that petitioner owes a duty to use reasonable care under the circumstances (Curry v New York City Hous. Auth., supra) and petitioner breached this duty by failing to replace or properly repair the front door. The court holds that this counterclaim may be raised in this summary proceeding.[2] (See, Harfried Realty Co. v Spuyten Amusement Corp., 150 Misc 904 [App Term, 1st Dept] [counterclaim based on negligence allowed in summary proceeding].) In Century Apts. v Yalkowsky (106 Misc 2d 762 [Civ Ct, NY County 1980]), the court allowed counterclaims for punitive damages and intentional infliction of emotional distress reasoning that the warranty of habitability claim served as the foundation for the two counterclaims.
In the case at bar there is a direct nexus between the warranty of habitability claims and the negligence counterclaim. Since the same condition gives rise to both claims the proof required to establish the two counterclaims is similar. The negligence counterclaim is sufficiently intertwined with the issues involved in this nonpayment action to be tried in the same proceeding. This serves the interest of judicial economy as well as insuring a consistent resolution of the entire controversy.
III. MOTION FOR DISCOVERY.
In support of its motion for discovery petitioner contends that it was not on notice as to the amount of alleged property damage or whether in fact respondent even suffered damages. Petitioner seeks to determine why respondent withheld rent from October 1986 onwards, where the alleged burglary did not occur until June 1987. Additionally, petitioner questions whether there was ever a forced entry.
The motion is granted to the extent of allowing petitioner to submit written interrogatories to respondent. In a plenary *574 proceeding petitioner would be entitled to answers to those questions prior to trial and respondent’s claim would normally be raised in such a proceeding. The information petitioner seeks is relatively straightforward (some of which has already been supplied in respondent’s opposition papers) and can be adequately covered through written interrogatories.
Discovery is to be completed by November 25, 1987. The case is restored to the Part 18 Calendar on December 9, 1987 for trial.

. The fact that the landlord may not have control over the acts of the third party is not relevant as the warranty of habitability can apply to conditions caused by events beyond the landlord’s control. (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 325; Sutton Fifty-Six Co. v Fridecky, 93 AD2d 720 [1st Dept 1983] [adjacent landlord may be cause of breach of warranty of habitability].)

. Of course, respondent’s first counterclaim alleging breach of the warranty of habitability may not be waived as a matter of law (Real Property Law § 235-b [2]; Sutton Fifty-Six Co. v Fridecky, 93 AD2d 720).