*670 OPINION OF THE COURT
Arthur Birnbaum, J.
the ISSUE
In this residential nonpayment summary proceeding the novel issue presented at trial was whether petitioner, a proprietary lessor, violated its statutory obligation to respondent, a proprietary lessee, and breached the warranty of habitability provided in section 235-b of the Real Property Law by permitting a commercial tenant of the contiguous lower floor (street level) of the building to erect and maintain an illuminated white awning directly below and outside of respondent’s bedroom window. This court holds that under the facts presented at trial no breach of the warranty of habitability occurred as a result of the erection and maintenance of the illuminated awning.
THE FACTS
Petitioner, 169 East 69th Street Corp., is a cooperative corporation and seeks a judgment of possession and a money judgment against respondent, Robert Leland, for maintenance, late fees and legal fees. In asserting the affirmative defenses of breach of the warranty of habitability and constructive eviction, respondent claims, inter alia, that a "bright light” cast by an illuminated awning erected by petitioner’s commercial tenant of the street level floor, as well as renovations performed by this commercial tenant, amounted to a breach of the warranty of habitability. Respondent also disputes liability for late fees and seeks an award of counsel fees.
Stipulated Maintenance: Disputed Legal and Late Fees
It was stipulated at trial that respondent owes maintenance in the sum of $24,796.90 through the month of January 1992. After commencement of trial respondent began paying current maintenance. Petitioner contends respondent owes late fees of $100 per month through that date. Respondent disputes liability for late fees.
Discussion of the Parties’ Contentions
Specifically, respondent’s claim for an abatement of rent is based upon three grounds, viz.: (i) the "bright light” generated *671 by the illuminated awning erected by Lechters (the first floor commercial tenant directly below respondent’s apartment) interfered with respondent’s quiet enjoyment of the apartment, (ii) Lechters’ renovation process of the street level premises included unauthorized and disruptive activities, and (iii) security lights placed by petitioner on a sidewalk bridge erected during Lechters’ renovation shone intermittently into respondent’s apartment.
Petitioner disputes the nature and severity of all of the alleged conditions and denies proper notice of these conditions by respondent. Essentially, petitioner asserts that respondent is hypersensitive and that his complaints are unreasonable.
Uncontroverted trial testimony established that respondent occupied the second floor apartment with his wife since 1963; both are advanced in years and are not in perfect health.
In early 1990 petitioner entered into a commercial lease with Lechters. The Lechters’ space was renovated and an illuminated awning was affixed to the building by Lechters below respondent’s apartment.
I. The Lechters’ Illuminated Awning
The nature and effect of the illumination of the Lechters’ awning was hotly contested by the parties. The awning was installed in June 1990. Respondent contended that the awning was illuminated all night long from its installation in June to November 1990 and that it shone directly into their bedroom. Concededly, at the time of trial, the illuminated awning was turned off at 10:00 p.m. each night.
According to respondent Leland (who testified that he suffers from bronchial asthma and that his wife suffers from Alzheimer’s disease), both he and his wife were greatly disturbed and affected by the light cast by the Lechters’ illuminated awning. Respondent Leland refused to close his bedroom curtains due to the fact that his wife felt very uncomfortable and claustrophobic. Petitioner characterized respondent as "oversensitive” testifying that the illuminated awning was not so bright as to disturb a reasonable individual and, in any event, respondent could eliminate the perceived problem simply by closing the curtains of his bedroom window.
II. The Flashing Sidewalk Bridge Floodlight
It was conceded that petitioner caused to be installed two bright floodlights on the sidewalk bridge which sidewalk *672 bridge remained in place from December 1990 until November 1991. These lights flashed on and off intermittently and could be seen in respondent’s apartment. The parties disagreed as to the duration of the flashing lights. According to petitioner the flashing floodlights were only operative for one evening during the period that the sidewalk bridge was in existence. However, respondent claimed the floodlights were utilized until the sidewalk bridge was dismantled in November 1991.
III. The Lechters’ Renovations
Petitioner admitted Lechters engaged in renovations to the commercial space for six weeks commencing March 1990; however, petitioner disputed that (a) renovation was performed except during the hours of 9:00 a.m. to 5:00 p.m., (b) renovation was disruptive, and (c) respondent properly notified petitioner of any alleged disruption. Petitioner’s managing agent, Thomas Usztoke, testified that some renovation work was performed after 5:00 p.m. on "one occasion”. According to respondent the disturbance due to the renovations lasted until June 1990 and included vibration, banging, and hammering.
Claimed Breach of the Warranty of Habitability
Real Property Law 235-b established the statutory warranty of habitability and provides, in pertinent part: "1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety. When any such condition has been caused by the misconduct of the tenant or lessee or persons under his direction or control, it shall not constitute a breach of such covenants and warranties.”
Initially, Real Property Law § 235-b is applicable to a proprietary lessee (Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept 1981]).
In the landmark case of Park W. Mgt. Corp. v Mitchell (47 NY2d 316, 327 [1979], cert denied 444 US 992 [1979]) the Court of Appeals interpreted Real Property Law § 235-b and defined the parameters of its application as follows: "Petitioner main *673 tains, and rightfully so, that a landlord is not a guarantor of every amenity customarily rendered in the landlord-tenant relationship. The warranty of habitability was not legislatively engrafted into residential leases for the purpose of rendering landlords absolute insurers of services which do not affect habitability. Rather section 235-b of the Real Property Law was designed to give rise to an implied promise on the part of the landlord that both the demised premises and the areas within the landlord’s control are fit for human occupation at the inception of the tenancy and that they will remain so throughout the lease term.”
Did the Illuminated Awning Violate the Warranty of Habitability?
This court holds that under the facts elicited at trial no violation occurred of section 235-b of the Real Property Law (warranty of habitability). While a "light source” may serve as a basis for a violation of section 235-b of the Real Property Law no such reasonable proof was established at this trial. Nor was proof established of a cause of action on any other sustainable theory. A source of light can be the basis of a cause of action in trespass (Amphitheaters, Inc. v Portland Meadows, 184 Ore 336, 198 P2d 847 [1948]). More frequently in "light cases” a cause of action in nuisance is claimed: "The private nuisance light cases, considered as a whole, seem to warrant the generalization that if the intensity of light shining from adjoining land is strong enough to seriously disturb a person of ordinary sensibilities, or interfere with an occupation which is no more than ordinarily susceptible to light, it is a nuisance; if not, there is no cause of action. The courts will not afford protection to hypersensitive individuals or industries” (Annotation, Casting Of Light On Another’s Premises As Constituting Actionable Wrong, 5 ALR2d 705).
Of course, as regards to a normal person, what constitutes the quantum light held to be unreasonably disturbing varies with the factual situation. Certainly, people who live in a crowded urban environment must expect less than pristine, bucolic conditions and have universally been held to expect a certain "annoyance factor” not experienced by their country cousins (cf., Mantica R Corp. NV v Malone, 106 Misc 2d 953 [Civ Ct, NY County 1981] [regarding reasonable expectation of a noise free environment]). In Mantica (supra) the court held that the tenant’s knowledge that the landlord was performing renovation was part of the tenant’s expectation that there *674 may be dirt and noise and some annoyance and inconvenience. Reasonable use intended by the parties was also addressed in Solow v Wellner (150 Misc 2d 642, 650 [Civ Ct, NY County 1991]) where the court held: "Certain amenities not necessarily life threatening, but consistent with the nature of the bargain — air conditioning would be an example— fall under the protection of this branch of the warranty. (Mantica R Corp. NV v Malone, supra.) Predictability and reliability of services is another factor. (Tower W. Assocs. v Derevnuk, supra; 111 E. 88th Partners v Simon, 106 Misc 2d 693 [Civ Ct, NY County 1980], mod on other grounds 127 Misc 2d 74 [App Term, 1st Dept 1985].) The location of the premises, the amenities that are touted to go with the apartment, and representations made by the landlord consistent with the lease are all factors that enter into a tenant’s reasonable expectations. (Forest Hills No. 1 Co. v Schimmel, 110 Misc 2d 429 [Civ Ct, Queens County 1981].)”
In the instant case, respondent knew he was living directly above commercial space facing a busy City thoroughfare, Third Avenue at approximately 69th Street. The installation and use of Lechters’ illuminated awning is something that could be reasonably expected by the parties, given the location of the apartment. Furthermore, it is reasonable to expect that if any light cast into the Leland apartment from the awning was disturbing, respondent would close his curtains. "If, in the eyes of a reasonable person, defects in the dwelling deprive the tenant of those essential functions which a residence is expected to provide, a breach of the implied warranty of habitability has occurred” (Park W. Mgt. Corp. v Mitchell, supra., 47 NY2d, at 328). In this case, respondent has failed to demonstrate that a reasonable person would find the Lechters’ awning to be so intrusive as to render the bedroom unusable or unsafe (New York Univ. v Schurtman, NYLJ, Dec. 15, 1992, at 21, col 1 [App Term, 1st Dept]). Even giving credence to respondent’s claim that the illuminated awning remained on past 10:30 from June 1990 to November 1990, respondent’s position was not demonstrated by the credible evidence.
In the instant case, the disruption experienced by respondent was minimal and within the parties’ reasonable expectations given the location of the apartment (second floor) and the population density of Manhattan. Progress necessitates activity which in turn can result in annoyance. However, section 235-b of the Real Property Law does not guarantee an annoyance-free existence in New York City. A review of the *675 cases in this area reveals that disturbances predicated upon an offending light source must demonstrate a substantial and serious interference with a claimant’s use of premises to be actionable.
In Buffalo Park Lane v City of Buffalo (162 Misc 207 [Sup Ct, Erie County 1937]), the court held that one seeking to restrain his neighbor’s use of the neighbor’s property must show a substantive injury, rendering its use uncomfortable, or hurtful. In Buffalo Park a floodlight erected on a tree steadily glaring into plaintiff’s house led the court to conclude that a private nuisance was established. The court granted plaintiff injunctive relief and ordered that the floodlight be located at a lower height. In Russell v Nostrand Athletic Club (212 App Div 543 [2d Dept 1925], mod 240 NY 681 [1925]), the Court held that a sports arena brilliantly illuminated with lights which were flashed on and off at frequent intervals contributed to the finding that a nuisance was created. In Shelburne, Inc. v Crossan Corp. (95 NJ Eq 188, 122 A 749 [Ct Chancery 1923]), the court ruled that a company displaying a large illuminated sign opposite a new hotel wing could keep the sign lit until the hotel orchestra finished playing (at midnight) as both activities were apt to disturb sleeping guests.
These early cases illustrate that a light source could constitute a nuisance depending upon the scope and extent of the disturbance it created. The statutory warranty of habitability (Real Property Law § 235-b) should have the same application predicated upon a reasonable evaluation of the condition created by an offending light source.
The Flashing Sidewalk Bridge Light and the Lechters’ Renovations
The court finds no basis after evaluation of the credible testimony for a finding of breach of the warranty of habitability based upon either of these claims.