OPINION OF THE COURT
Frederick D. Schmidt, J.
This action was commenced by the plaintiff to recover the unpaid balance due on a residential lease dated August 20, 1988 commencing on January 1, 1989 and ending on December 31, 1990 covering premises known as apartment 2R at 37-20 45th Ave. Flushing, New York, in Queens County. The lease was allegedly breached on December 12, 1989 when the tenant moved out. Tenant’s rent was $624.36 payable in advance on the first day of each and every month.
The tenant notified the landlord prior to December 5, 1989 when she gave the keys to the superintendent and moved out. She told the superintendent that they were moving out because they were terrified and in fear for their lives.
The tenant admits signing the original lease and the renewal agreement and admits vacating the premises prematurely.
The landlord, upon the tenant’s surrender of the apartment, reentered the apartment on December 5, 1989 and rented the apartment for $793.25 per month on March 1, 1990.
The new lease ended on February 29, 1992 after the term of the defendants’ lease.
The landlord is suing for $1,989.68 for the time the apartment in question was left vacant plus attorney’s fees of $397.62 with interest from December 1, 1989.
FINDINGS OF FACT
The court having heard the testimony of Gordon G. Duffy, the assistant manager for plaintiff leasing corporation, the testimony of the defendant Carmen Burgos, Lydia Gonzalez, and Elsi Farfan, makes the following findings of facts based on the credible evidence.
The defendant Carmen Burgos, her elderly mother, her 16-year-old daughter, and 20-year-old son lived together in the apartment in question since 1975 without incident until the landlord rented an adjacent apartment to tenants who began to deal drugs from their apartment on a 24-hour basis. Complaints were made to the landlord which at first were ignored *376 until the defendant, Carmen Burgos, gathered a petition with over 170 signatures from other tenants. The landlord instituted a summary proceeding in the Housing Court to evict the drug-dealing tenants in question. Carmen Burgos testified at the trial which occurred on September 7, 1989. From the beginning of the defendant’s complaints in the beginning of 1989 until the defendant left her apartment on December 5, 1989 the defendant began to be harassed and terrorized. Her windshield on her car was smashed, her four tires were slashed, the windshield wipers were broken off, people would bang on the door at all hours and curse and make threats, and throw stones at the door. On March 29, 1989 at 2:00 a.m. shots were fired at the defendant’s door. The security guard at some time between the beginning of defendant’s complaints and the moveout was shot. All of these incidents were well known to the landlord, who did nothing until defendant gathered the petition of the other tenants even though they were well aware of the situation many months before defendant’s initiative. The tenant moved out of the apartment in question and into an apartment in a safer building at a much higher rent because she was in fear for her life and her family’s life. The drug dealers were still in possession of their apartment when the defendants moved out on December 5, 1989.
THE ISSUE
Should the landlord of a residential apartment house protect tenants against the depredations of known resident drug dealers and other criminals?
CONCLUSIONS OF LAW
The court finds that the living conditions at 37-20 45th Avenue, Flushing, had become dangerous for the tenant and her family. From the beginning of 1989 until the tenant moved out on December 5, 1989 the tenant and her family were bullied, harassed, threatened with violence in many forms and as a result terrified and in fear of their lives and safety.
The court finds, further, that the landlord became obliged to take steps to protect the tenants from this violation of their right of quiet enjoyment of the premises. Despite the undisputed knowledge of the various incidents around the immediate vicinity of the premises the landlord took inadequate steps *377 to remedy the situation. The summary proceedings initiated primarily through the efforts of the tenant were too little and too late to protect the tenant who became the target of her drug-dealing cotenant.
The court finds that the plaintiff landlord has thus breached the statutory implied warranty of habitability guaranteed every tenant under section 235-b of the Real Property Law as well as the express warranty of use and quiet enjoyment in the defendant tenant’s lease. In Park W. Mgt. Corp. v Mitchell (47 NY2d 316) Chief Judge Cooke states that the statute (Real Property Law § 235-b) was designed to give rise to an implied promise on the part of the landlord that both demised premises and areas within the landlord’s control are fit for human occupation at the inception of the tenancy, and the premises will remain so throughout the lease term. In Brownstein v Edison (103 Misc 2d 316) and Sherman v Concourse Realty Corp. (47 AD2d 134), where the landlord had installed special locks and buzzers on the front door to prevent criminals from entering the apartment buildings and the locks and buzzers became inoperative and in Brownstein (supra) a tenant was murdered in the lobby, and in Sherman (supra) a tenant was severely assaulted, the courts held that the landlord had assumed the duty to provide some degree of protection to the tenants by providing these protective devices, and the landlords in both cases were to render an essential service affecting habitability. Thus, when the locks and devices became inoperable, the landlord(s) breached the implied warranty of habitability.
Finally, the court relies on Highview Assocs. v Koferl (124 Misc 2d 797) where plaintiff landlord of a 366-unit garden apartment complex breached the implied warranty of habitability, as well as the express warranty of use and quiet enjoyment, by its failure to take any steps to protect its tenants in the face of the many (i.e., 10) notices of theft and burglaries committed in the complex in one year.
The defendant tenant acted reasonably and prudently in vacating the apartment before the expiration of the lease since it became evident that it was not safe for her or her family to live in the apartment any longer.
The court notes that had this been a summary proceeding in the Housing Part of the Civil Court the court would have been well within its rights to abate the rent on the grounds that pursuant to RPAPL 755 (1) (b) the tenant had been *378 constructively evicted because the premises had become dangerous to life, health or safety.
Accordingly, judgment for the defendant. The plaintiff's complaint is dismissed with costs to the defendant.