OPINION OF THE COURT
Bruce J. Gould, J.
The owner of this two-family attached house sued for monthly arrears of $650 for February and March 1994 for this 31/2-room ground floor apartment. Alanna Zuckerberg-Spesaison, the only respondent to appear, claimed breach of the warranty of habitability for petitioner’s failure to remove the snow from her walkway, failure to provide adequate heat, a leak and falling plaster in the living room and intrusion into the apartment without permission. The respondents surrendered the premises prior to trial.
After trial the court awards a monetary judgment for $1,040 in consideration of an abatement of $260 (20%).
The entrance door to respondent’s apartment, as clearly shown in exhibits A3 and A5, is on the left side of the concrete 13-step external staircase leading to petitioner’s second floor.
A major complaint of respondent was petitioner’s failure to shovel the snow from the walkway abutting this staircase leading to her entrance door! The written E-Z Residential Lease does provide a modicum of guidance as to maintenance of this area adjacent to respondent’s door, akin to her front yard: "The demised premises shall be used and occupied by Lessee exclusively as a private single family residence * * * Lessee shall comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy and preservation of the demised premises, and the sidewalks connected thereto” (emphasis added).
The Housing Maintenance Code (Administrative Code of City of NY § 27-2005 [c]) provides that: "The owner of a one- *509 or two-family dwelling shall keep the premises in good repair, and shall be responsible for compliance with the provisions of this code, except to the extent otherwise agreed between such owner and any tenant of such dwelling by lease or other contract in writing”. The court, however, need not determine the issue of respondent’s dominion over this area, or the amount to be awarded for this alleged breach of warranty, for the respondent’s series of photographs, exhibits Al to A5, fail to disclose more than a light dusting of snow in this protected area adjacent to respondent’s entrance door. While the court heard testimony from respondent’s friend that at one point he had to carry her out of the house due to the snow, there was no testimony whatsoever by respondent as to the depth of this walkway’s winter snows or of any snow obstacle which confronted her in seeking ingress to or egress from her apartment.
The court awards no abatement for this claim.
Respondent complained that it was cold in her apartment. No dates or times were testified to. Petitioner’s wife took the stand to testify that she was sensitive to cold, that the single thermostat controlling both apartments was in petitioner’s apartment and under their control and that she made certain that it was maintained at a comfortable level. Two police officers, subpoenaed by respondent, testified that they found the temperature in her apartment comfortable when they responded to her complaints about water damage and petitioner’s intrusion into her apartment. The court awards no abatement for this claim.
One of the officers testified in detail about the collapsed water-damaged ceiling in petitioner’s apartment, the source of the damage to respondent’s bedroom ceiling and wall. The numerous photographs, collectively marked exhibit B, the insurance claim adjuster’s file and testimony clearly delineated the source of the damage — the leaking roof which petitioner promptly undertook to have shored-up with emergency repairs awaiting the needed rise in the winter’s temperature to lay a new roof. By mid-February, after a month’s weather necessitated delay, the roof was repaired.
The testimony of the insurance adjuster, police officers and photographic evidence showing respondent’s water-stained ceiling and wall, belie petitioner’s claim that respondent self-inflicted this damage. The court awards an abatement of 5% for this claim.
*510 Real Property Law § 235-b (1) provides that leased residences must be "fit for human habitation and for the uses reasonably intended by the parties” (emphasis added). The warranty of habitability is breached therefore when a tenant is deprived of "those essential functions which a residence is expected to provide” (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 328 [1979]).
The warranty of habitability is to be interpreted broadly. In Mantica R Corp. v Malone (106 Misc 2d 953 [Civ Ct, NY County 1981]), the court compared section 235-b with the covenant of quiet enjoyment and found section 235-b to comprise "a broader and more encompassing” basis of protection for tenants (at 955). In Mantica, where the landlord carried out a construction project next door to the tenant’s apartment, the court held that the landlord violated section 235-b by creating excessive noise. It was found that such an "annoyance and inconvenience” could serve as a basis for breach of the tenant’s reasonable expectations under section 235-b (at 955).
The right to exclude is a fundamental tenet of real property law. Cunningham, Stoebuck, and Whitman, The Law of Property § 7.1 (at 411) calls exclusive possession "the most nearly absolute of the many property rights that flow from [the] rightful possession of land.” Just as the Mantica court found that the expectation of quiet living quarters is reasonable, the tenant has a right to expect exclusive possession of the leased premises.
The landlord is restrained from entering a tenant’s premises without proper notice.[1] The Housing Maintenance Code clearly delineates an owner’s statutory right of access.[2] *511 While here the landlord’s several entrances without permission were not "so intrusive as to render the [premises] unusable” with respect to exclusive possession as intended by the parties (169 E. 69th St. Corp. v Leland, 156 Misc 2d 669, 674 [Civ Ct, NY County 1992]), a landlord’s unlawful entry of tenant’s premises is an "annoyance and inconvenience” which violates the tenant’s reasonable expectation of privacy and right to exclusive possession. Therefore, such entry by the landlord clearly constitutes a breach of section 235-b.
The court awards an abatement of 15% for this claim.

. (Tiffany, Real Property § 94, at 144 [3d ed].) Under certain circumstances, absent here, a tenant must allow entry by the landlord.

. Administrative Code § 27-2008 reads: "No tenant shall refuse to permit the owner * * * to enter [the demised premises] * * * to make repairs or improvements required by this code or other law or to inspect [the demised premises] to determine compliance with this code or any provision of law, if the right of entry is exercised at a reasonable time and in a reasonable manner. The department may by regulation restrict the time and manner of such inspections.”
Those regulations read (28 RCNY 25-101):
"(a) Owner to give notice. Where an owner seeks access to an apartment, suite of rooms or to a room, under the provisions of § 27-2008 in order to make inspection therein for the purpose of determining whether such places are in compliance with the provisions of the multiple dwelling law of [sic] the administrative code, he shall notify the tenants that [s]he will seek *511 access * * * not less that [sic] twenty-four hours in advance of such time. Where an owner, contractor or agent * * * seeks access to make improvements required by law or * * * repairs, notice shall be given * * * not less than one week in advance * * * when the improvements or repairs are to be started. However, where repairs are urgently needed in emergencies to prevent damage to property or to prevent injury to persons, such repairs of leaking gas piping or appliances, leaking water piping, stopped-up or defective drains or leaking roofs, broken and dangerous ceiling conditions, no advance notice shall be required from the owner, agent, contractor or workman.
"(b) Notices to be in writing. Where an owner is required to give notice in advance * * * such notice shall be in writing and shall contain a statement of the nature of the improvement or repairs to be made.
"(c) Authorization to be in writing. Where an authorized agent or employee or an owner seeks access * * * the authorization of the owner shall be in writing and the agent or employee shall exhibit such authorization to the tenant when access is requested.
"(d) Hours when access to be permitted. Except in emergencies, access * * * shall be limited, to the hours between nine * * * and five * * * Access shall not be required on Saturdays, Sundays or legal holidays except in emergencies.